FRANCIS C. WELCH & others, executors & trustees, *vs.*
HAROLD BLANCHARD & others.

Suffolk.    January 20, 1911. — April 7, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Devise and Legacy*, To "heirs."    *Trust*, Construction.    *Words*, " Heirs at law."

A bequest or devise to " heirs " or " heirs at law " of the testator will be construed
as having been used accurately and to mean those who take the testator's real
estate at the time of his death unless a different intent is plainly manifested by
the will.

A testator by the first three clauses of his will gave legacies to various servants, a
bequest of money to an academy for a library, and bequests to two unmarried
daughters equal to sums given to other daughters upon their respective mar-
riages ; by a fourth clause he established three trust funds, two for the benefit
of servants during their respective lives and one to furnish an income for the
purpose of enabling the unmarried daughters to keep the homestead in good
condition, the clause ending with the words, " The principal sums or funds
shall, as the trusts cease, be distributed to my heirs." A fifth clause gave to
his son the land within the fence of the homestead. A sixth and a seventh
clause gave the residue of the testator's real estate and the personal property
pertaining to the homestead to his unmarried daughters for their lives and the
life of the survivor so long as they or she should continue unmarried, and,
" after the marriage or death of " such survivor " the estate herein devised shall
descend to those persons who may then be entitled to take the same as my
heirs." An eighth clause gave to the son one sixth of the residue of the personal
estate and to trustees the other five sixths in trust to pay the income to all of the
testator's daughters in equal shares and to the issue of any deceased daughter,
such issue taking the mother's share, and " after the decease of the survivor of
my daughters the trust fund created by this item shall be distributed to those
persons who may then take the same as my heirs." In a suit after the death
of the survivor of the daughters by the trustees under the eighth clause, for
instructions as to the disposition of the fund, it was *held,* that the word " heirs "
in the eighth clause meant real " heirs," and not such persons as would have
been heirs had the testator died at the time of the termination of the trust,
and therefore that the fund should be distributed among those persons then en-
titled as heirs of the testator or as succeeding to rights of heirs either as their
next of kin or by bequest or assignment.

BILL IN EQUITY, filed in the Supreme Judicial Court on Octo-
ber 10, 1910, by the trustees under the will of John Dove, late
of Andover, for instructions.

The case was heard by *Braley*, J., upon the bill, answers and
certain facts agreed upon by counsel. The single justice ruled
that, under the eighth clause of the will, which is described in

the opinion, the testator's heirs were to be ascertained as of the date of his death and not as of the date of the death of his last surviving daughter, ordered a decree to be entered that the fund was to be distributed accordingly, and at the request of certain of the defendants reported the case with the stipulation that, if the ruling was correct, a decree was to be entered accordingly; otherwise, such decree was to be entered as the full court might determine.

*J. L. Thorndike*, for John A. Blanchard and others.

*H. Wheeler*, for Marion Dove Lee and others.

LORING, J.   By the eighth article of his will John Dove gave one sixth of the residue of his estate to his son outright and five sixths thereof to trustees to pay the income thereof to all his daughters, in equal shares, and to the issue of any deceased daughter (such issue taking their mother's share) ; and " after the decease of the survivor of my daughters the trust fund created by this item shall be distributed to those persons who may then take the same as my heirs."   John Dove died in 1876, and the last surviving daughter died in 1910.   The question we have to decide is whether by the true construction of these words this fund is to be distributed to and among those persons who are entitled thereto in 1910 as the heirs of John Dove who died in 1876 (including persons who have succeeded to the rights of his heirs as next of kin or by bequest or assignment) on the one hand, or on the other hand to and among those persons who would have been the heirs of John Dove if he had died in 1910 in place of 1876.

A man's heirs are not ascertained until he dies, and using words with accuracy a man's heirs cannot be ascertained at any other time or as of any other time.   But a testator may make a gift to persons who would have been his heirs had he died at some time other than the time when he did die (see for example *Peck* v. *Carlton*, 154 Mass. 231).   This is not (using words with accuracy) a gift to heirs but to a body of artificial or hypothetical heirs (see *In re Wilson*, [1907] 2 Ch. 572, 575), that is, to persons who would have been his heirs had he died under circumstances different from those under which he did die.

The rule of construction in cases like that now before us was settled as early as *Abbott* v. *Bradstreet*, 3 Allen, 587, and it is

this: "A bequest or devise to 'heirs' or 'heirs at law' of a testator, will be construed as referring to those who are such at the time of the testator's decease, unless a different intent is plainly manifested by the will." See p. 589. This rule has since been adhered to. The last case is *Jewett* v. *Jewett*, 200 Mass. 310. It was said in *Whall* v. *Converse*, 146 Mass. 345, 348, that: "The reasons for this rule are, that the words [heirs of the testator] cannot be used properly to designate anybody else [than those who take his real estate at his death] "; that the testator wishes the law to take its course; "and, perhaps, that the law leans toward a construction which vests the interest at the earliest moment."

We do not spend time on a discussion of what the construction of these words in the eighth article of this will would have been if they had stood alone. For they do not stand alone, and the general scheme of the will shows that the intention of the testator was that on the death of the last surviving daughter this fund should be distributed to and among those entitled to it then as the real heirs of the testator including those who had succeeded to the rights of his heirs as their next of kin or by bequest or assignment from them.

The testator was a widower with one son and five daughters, possessed of a very considerable property, about $90,000 of which was in real estate including his homestead. It does not directly appear that he had any land in addition to the homestead except that within the fence around his son's house which he devised to his son.

He first gave legacies amounting to $3,000 to several persons who may be assumed to have been servants, a bequest of $10,000 for a library at Phillips Academy in Andover, and to his two unmarried daughters bequests equal in amount to the sums given by him on their marriage to his other daughters. These sums amounted to some $28,000. Then, by the fourth article of the will, he gave to trustees $2,000 to pay the income thereof to one Mary McLagan during her life, $5,000 to pay the income thereof to one Coulie during his life, and $50,000 to pay the income thereof to his unmarried daughters and the survivor of them so long as they or she remained unmarried and occupied the homestead, "for the purpose of enabling them to keep said

homestead in good order and condition." This (the fourth article) ends with these words: "The principal sums or funds shall, as the trusts cease, be distributed to my heirs." By the fifth article he gave to his son the land within the fence of his homestead, and by the sixth article he devised to his unmarried daughters the residue of his real estate for their lives and the life of the survivor so long as they or she should continue unmarried. He then provided that "after the marriage or death of my surviving daughter taking under this item the estate herein devised shall descend to those persons who may then be entitled to take the same as my heirs." By the seventh article he gave the personal property pertaining to the homestead to his daughters, to be held by them upon the same terms as the real estate covered by the sixth article, and by the eighth article (the article here in question) he bequeathed to his son (in the event which happened) one sixth of the residue of his personal estate, and to trustees the other five sixths thereof in trust (as we have said) to pay the income thereof to all his daughters in equal shares and to the issue of any deceased daughter (such issue taking their mother's share); and "after the decease of the survivor of my daughters the trust fund created by this item shall be distributed to those persons who may then take the same as my heirs."

Apart from the provisions for servants, for the library, and his son, the scheme of the will was to create life estates in five different funds and as the life estate or the last life estate in each fund came to an end the principal of that fund was to pass to or be distributed among his heirs. These several life estates of necessity would terminate at three different times and might terminate at four or possibly five different times. Consequently the five different funds would pass under the gifts over at three, four or possibly five different dates. It is hardly conceivable that the testator should have intended that these several gifts over to heirs should be to three, four or possibly five sets of different hypothetical heirs. On the contrary it is plain that all that the testator wished to do was to provide for certain persons by creating life estates in the five different funds, and having done that to let the law take its course in each instance.

Again, it is hard to believe that the testator intended the gift

over made by the eighth article to be a gift to artificial or hypothetical heirs, while the gifts over made in the fourth and sixth articles were to his real heirs. It was decided in *Dove* v. *Torr*, 128 Mass. 38, that the gift over in the sixth article was a gift to the testator's real heirs. And it is plain that the gift over made in the fourth article is the same, that is, to his real heirs. That gift plainly comes within the rule established in *Abbott* v. *Bradstreet*, 3 Allen, 587, and since acted upon, the last case being *Jewett* v. *Jewett*, 200 Mass. 310. The fact that a gift over is made only by a direction to distribute does not prevent the application of the usual rule. The gift over in the following cases was only by way of a direction to pay or distribute: *Minot* v. *Tappan*, 122 Mass. 535; *Dove* v. *Torr*, 128 Mass. 38; *Whall* v. *Converse*, 146 Mass. 345; *Rotch* v. *Rotch*, 173 Mass. 125; *Jewett* v. *Jewett*, 200 Mass. 310. See also 2 Wms. Ex. (9th ed.) 1108; 1 Wms. Ex. (10th ed.) 990, 991; 2 Jarm. Wills, (6th ed.) 1104.

It has been urged with great insistence by the learned counsel for the appellant that it could not have been the testator's intention that when the time for distribution came any one should take who was not a blood relation or a statutory heir, and that under the construction adopted by the single justice the assignees of an heir would and in this case do take. But it is evident that it was no part of the intention of the testator in making this will to guard his heirs against their own improvidence. He did not provide as he might have done that what they took under his will should not be alienated by them or taken by their creditors. He was content to create certain life estates and then to let the law take its course, which included the right of his children to assign or bequeath their respective shares of his property subject to the several life estates created by him.

We are therefore of opinion that by the true construction of the eighth article of the will here in question the principal of the trust fund there created should be distributed to and among those persons now entitled to it as the heirs of the testator, including persons who have succeeded to the rights of his heirs as next of kin or by bequest or assignment.

*Decree accordingly.*