THOMAS UPHAM, trustee, *vs.* ROBERT E. PARKER & others.
HENRY PARKMAN, trustee, *vs.* SAME.

Suffolk.    January 19, 20, 1915. — March 2, 1915.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Devise and Legacy. Words,* "Legal heirs," "Convey, assign and transfer."

A testator left all his real and personal property in trust, to pay his widow one third of the net income during her life, and to pay the remaining two thirds of the net income and after the death of his widow the whole of it to his three daughters named in equal shares, "and after the death of one or more of them to pay over the proportion of said net income to which such deceased would have been entitled if living to the legal heirs of such deceased: and upon the death of my wife and of all my said daughters to convey, assign and transfer all my said real and personal property to the legal heirs of my said daughters in equal proportions by right of representation to have and to hold to them their heirs and assigns forever." The testator's widow waived the provisions of his will. The testator's three daughters died one after another, two unmarried and the other leaving a husband and children. Last of all the testator's widow died. One of the unmarried daughters of the testator was also the daughter of his widow. His other two daughters were by a former marriage. On a bill for

instructions as to the final distribution of the trust fund, it was *held,* that the "legal heirs" of the testator's daughters to whom the distribution was to be made were their respective heirs at the times of their respective deaths, that the words "convey, assign and transfer" did not show an intention of the testator to postpone the vesting of the remainders until the time of distribution but referred merely to the time when the donees would become entitled to possession; and that the fact that the testator's widow had waived the provisions for her benefit in his will did not prevent her from taking her share as the legal heir of her daughter.

CROSBY, J. These are bills in equity for instructions,* as to the distribution of a trust fund under the will of William P. Emerson. The will was dated April 11, 1870, and was duly proved and allowed by the Probate Court for the County of Suffolk by a decree dated May 15, 1871. The material provision of the will is as follows:

"I appoint Thomas Upham of Boston, Massachusetts, who shall be exempt from furnishing sureties on his official bonds, Executor of this my last will and testament and also give, devise and bequeath to him all the real and personal estate of or to which I shall die seized, possessed or entitled in trust nevertheless to manage and take care of said real estate with power to lease the same and to collect the rents and profits accruing therefrom: and to take care of, manage and invest said personal estate and any personal property that may arise from any sale of real estate as hereinafter provided and collect the income thereof; and of the net income of all said real and personal property remaining after payment of all proper charges and expenses to pay over one third ($\frac{1}{3}$) to my wife Harriet M. Emerson once a quarter, her receipt to be a full discharge therefor during her natural life: and to pay the remaining two thirds ($\frac{2}{3}$) and after the death of my wife the whole of said net income, in equal shares to my daughters Helen W. Emerson, Adelaide A. Emerson and Emily

---

* The first bill was filed in the Probate Court for the County of Suffolk on January 15, 1913, and from the decree made by that court, three of the defendants appealed to the Supreme Judicial Court. The second bill was filed in the Supreme Judicial Court on April 25, 1914. A decree was made on the second bill which is mentioned near the end of the opinion. The same three defendants appealed from that decree. The cases came on to be heard together before *Pierce,* J., who at the request of the parties reserved them upon the pleadings and an agreed statement of facts for determination by the full court.

U. Emerson, their receipts to be a full discharge therefor during their lives and after the death of one or more of them to pay over the proportion of said net income to which such deceased would have been entitled if living to the legal heirs of such deceased: and upon the death of my wife and of all my said daughters to convey, assign and transfer all my said real and personal property to the legal heirs of my said daughters in equal proportions by right of representation to have and to hold to them their heirs and assigns forever."

The plaintiff Thomas Upham was duly appointed and qualified as executor and trustee under the will in May, 1871. The testator's widow, Harriet M. Emerson, duly waived the provisions made for her benefit in the will, and certain real estate and the proceeds of certain other real property previously sold by the trustee was set off to her as her dower, the property so set off being held by the defendant Parkman, the plaintiff in the second case, as trustee; the widow to receive the income for her life, and the principal thereof to be "at her death disposed of under the will of said William P. Emerson."

The testator's three daughters died as follows: Adelaide in 1871, Emily in 1874, and Helen in 1876. Adelaide and Emily never were married. Helen was survived by her husband and three children. She died testate and gave all her property to her husband. Emily was the youngest and was the daughter of the surviving widow. Adelaide and Helen were children of the testator by a former marriage.

Harriet M. Emerson, the testator's widow, died on July 17, 1907, testate, although she made no disposition by her will of any interest which she might have in the trust fund in question. Her only heirs at law and next of kin are the defendants Frank M. Parker, Robert E. Parker, Gillis M. Parker, nephews, and Florence T. Olliff, a niece. The question is whether the legal heirs of the daughters are to be ascertained as of the dates of the deaths of the daughters respectively, or whether they are to be ascertained as of the time of the distribution of the fund.

As the widow and the three daughters all have deceased, the time has arrived for the distribution of the trust fund. The appellants, as next of kin of Harriet M. Emerson, contend that the

widow inherited a vested interest or share in one eighth of the fund from her daughter Emily, and that such share belongs to the estate of Harriet M. Emerson.

The contention of the husband and surviving children of the testator's daughter, Helen W. Beseler, is that these three children were at the time of distribution the only heirs of their aunts, the testator's daughters Adelaide and Emily, and that they and their father were the only heirs of their mother; that the heirs should be ascertained as of the time of distribution, and that therefore the husband and daughters of Helen are entitled to the whole of the fund.

The familiar rule of construction that when a person refers to his heirs as persons who are to take the whole or a portion of his estate it is presumed to mean his heirs to be determined as of the time of his death unless a different intention clearly appears from the will, is well established. Different reasons have been given for the adoption of this rule. Whether it was adopted on the ground that the law favors vested rather than contingent remainders, or because a testator who has made a gift to his heirs desires, or at least is willing, that the law should take its course, or for some other reason, is immaterial at this time. *Welch* v. *Blanchard,* 208 Mass. 523. *Jewett* v. *Jewett,* 200 Mass. 310. *Bosworth* v. *Stockbridge,* 189 Mass. 266. This rule not only applies where the remainder is to the heirs of the testator, but is equally applicable where the remainder is to the heirs of a life tenant. *Gardner* v. *Skinner,* 195 Mass. 164.

The rules of construction which have been adopted are to be followed so far as they aid in determining the intention of the testator. That intention is to be ascertained from the will as a whole. As was said by Sheldon, J., in *Crapo* v. *Price,* 190 Mass. 317, 318: "Certain general rules have been adopted for the construction of wills; and it is important that such rules, especially so far as they have become rules of property or have declared principles of substantive law, should not be lightly departed from."

This provision of the will was construed by this court, so far as it referred to the payment of the income of the trust fund, in the case of *Upham* v. *Emerson,* 119 Mass. 509, in which it was held that the "legal heirs" of Adelaide A. Emerson were her two

sisters, Helen W. Beseler and Emily U. Emerson, and that the "legal heirs" of Emily U. Emerson were her sister, Helen W. Beseler, and her mother, Harriet M. Emerson. Gen. Sts. c. 91, § 1. That case decided that Mrs. Emerson's waiver deprived her of any beneficial interest under and by virtue of the provisions of the will, and consequently it was held that the widow was not entitled to any portion of Emily U. Emerson's share of the income at her death. The same words "legal heirs" are used in providing for the final distribution of the principal, as are used in the provision relating to the payment of the income, which is a fact of great significance in determining whether Emily took a vested remainder in any portion of the principal.

In *Russell* v. *Lilly*, 213 Mass. 529, 530, this court said that "where a word is used in one sense in one part of a will, and there is nothing to indicate a different meaning when the same word is used in another part, it may be presumed that the same meaning was intended."

It is difficult to find that the testator used the words "legal heirs" in any different sense, as applied to the final distribution of the principal, from that in which he used the identical words when he provided for the disposition of the income.

The former decision held that Mrs. Emerson could not take any portion of the remainder created by the will as a legal heir of Emily, because she would be obliged to take under the will and not by descent from Emily, and she was therefore barred by her waiver; however, as to any portion of the estate in which Emily took a vested remainder by the terms of the will, it would seem that her mother would inherit as her heir at law. While this question was not in issue in the case of *Upham* v. *Emerson*, 119 Mass. 509, it was intimated that Mrs. Emerson might so inherit as the heir at law of her daughter when the court said (p. 511): "It is not necessary to hold that the widow, by renouncing the provisions in her favor, is to be held to have renounced the benefits which she might receive by reason of her relation to some devisee or legatee under the will; so that if there had been an absolute devise or legacy to her daughter, she would be prevented by her waiver from receiving what she would otherwise be entitled to as heir."

When the testator provided in his will that the income which

he had given to his wife for her life should after her death be paid over in equal shares to his three daughters, it is apparent that he did not contemplate that his wife would survive his daughters; nor is there anything in the will from which it could be found that he believed his daughter Emily would die leaving no issue surviving; and while he must have known that his wife might waive the provisions of the will made for her benefit, still unless he also contemplated that his wife would survive Emily and that the latter would die without issue surviving, the waiver would not have led to an intestacy.

While there is much force in the argument of the learned counsel for the heirs of Helen W. Beseler that the testator intended that the whole of the trust fund should remain in his family and was created solely for its members, and that in making provisions for his "legal heirs" he meant that his grandchildren finally should take the fund, and that he did not intend to use language which would benefit his wife's collateral heirs at the expense of his grandchildren, still we must construe this will in view of the language used by the testator; and in ascertaining his intention the familiar and well established rules of construction are to be followed so far as they aid in determining the meaning of the language used.

We find nothing in the will to show that the testator, in providing for the final distribution of the fund, used the words "legal heirs" in a different sense from that of the same words when they were employed by him in disposing of the income. The will seems clearly to express the intention of the testator to vest the estate in the legal heirs of each daughter at the decease of each respectively.

At the date of the death of Emily U. Emerson her mother was her legal heir. *Upham* v. *Emerson,* 119 Mass. 509.

The fact that upon the death of the widow and all the daughters the trustee is to convey, assign and transfer the estate to the legal heirs and that there are no words of present gift, does not show that the testator intended to postpone the vesting of the remainder until the time of distribution or contrary to the general rule.

The direction "to convey, assign and transfer" does not affect the title, but only the time when the donee is entitled to posses-

sion. *Welch* v. *Blanchard*, 208 Mass. 523, 527. *Jewett* v. *Jewett*, 200 Mass. 310. *Whall* v. *Converse*, 146 Mass. 345.

As was said by this court in *Gray* v. *Whittemore*, 192 Mass. 367, 380: "In each of the cases in which such heirs take under the limitations of this will, they are necessarily to be determined at the death of the particular child in question."

It does not appear, as argued by counsel for the Beseler heirs, that the testator intended to limit the distribution of his estate to his own descendants. He must have known that the heirs of his daughters would be ascertained at the death of each, and that it might happen that some portions, if not all, of the estate eventually might pass into the possession of those who were strangers in blood to him. He was desirous of providing for the care and maintenance of his wife and children, and having accomplished that purpose, was willing that the shares of his daughters should pass to their heirs. In other words, after creating the life estates for the benefit of the daughters he was content to let the law take its course as to the final distribution of the estate.

As one fourth of the income has been added to the remainder in accordance with the decision in *Upham* v. *Emerson, supra,* such accumulations of income are to be treated as principal and distributed as such. *Upham* v. *Emerson, supra.* It follows that Harriet M. Emerson, at the date of her decease, was vested with a remainder equal to one twelfth of the estate as heir at law of her daughter Emily. Gen. Sts. c. 91, § 1.

Emily U. Emerson died also owning three thirty-sixths of the estate as intestate property, and upon her death Harriet M. Emerson, as one of her heirs, became entitled to one half of Emily's share, or three seventy-seconds of the estate.

The total share in the estate which the executor under the will of Mrs. Emerson is entitled to is therefore one twelfth and three seventy-seconds, or one eighth of the whole estate in the hands of the trustee.

The heirs of Helen W. Beseler are entitled to share in the remainder of the estate in the following proportions: Estate of Emily A. Beseler, eight twenty-sevenths; Frederick W. Beseler, eight twenty-sevenths; George E. Beseler, eight twenty-sevenths; and William Beseler, three twenty-sevenths.

The decree on the bill of Henry Parkman, trustee, so far

as it directs the trustee to pay over the fund belonging to the trust held by him to Thomas Upham for distribution, is hereby affirmed; but it is reversed so far as it designates the persons to whom the fund is to be distributed and the proportions thereof.

The decree entered in the Probate Court upon the petition of Thomas Upham is reversed and a decree is to be entered in accordance with this opinion; and the case is remanded to the Probate Court for further proceedings.

*Ordered accordingly.*

*J. M. Hallowell,* (*G. L. Mayberry* with him,) for the defendant Florence T. Olliff.

*E. F. Fish,* for the defendant Frank M. Parker, executor of the will of Harriet M. Emerson and one of her next of kin.

*A. Hemenway & G. L. Hemenway,* for the defendants Beseler.

*A. Fuller,* for the defendant Robert E. Parker, submitted a brief.