FANNY H. AMES & others, executors & trustees,
*vs.* PAULINE AMES & others.

Bristol.    October 26, 1920. — April 6, 1921.

Present: BRALEY, DE COURCY, CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Devise and Legacy*, Exercise of power of appointment, Residuary clause. *Evidence*, Extrinsic affecting writings. *Words*, "My estate."

A testator who left a widow but no children surviving him and at the time of his death owned real estate valued at about $89,700 and personal estate valued at about $452,000 and had a power of appointment over a trust fund of about $1,400,000, in a preamble to his will declared, "I intend by this will and instrument to dispose of all my property of every kind of which at my death I may be seized or possessed, or over which I may then have any power of disposition or disposal whatsoever, including the trust fund." By a ninth clause he gave to his widow "all my real estate absolutely," which included a dwelling in Boston, a large country place in Easton and a factory in Easton, together with "all the personal property of every kind and nature in use on either of my said places;" and, after the payment of preceding legacies and bequests, he gave her for life "the net income of my estate" subject to a provision that, if she remarried, such income should cease and in lieu thereof she should receive $50,000 outright "and my remaining estate shall then be distributed as hereinafter provided." A clause numbered eleven gave "all the rest, residue and remainder of my property, real, personal and mixed, including all the property over which I have power of appointment and disposal," one fifth to the children of a brother living at his decease, one fifth to each of his three sisters for life, with remainders to their children and, in default of children, to the beneficiaries of the other four fifths, on the terms under which each such fifth was given, and the fifth one fifth to the "trustees, herein named," to hold the income until the death of the husband of a fourth sister of the testator, adding it to the principal as it accumulated, and thereafter to pay such income "to the then living child or children" of that sister in the discretion of the trustees, with a survivorship among the children and a provision that, upon the death of the survivor, the entire fifth one fifth interest should go to a certain educational institution. The widow was named as one of three executors and trustees under the will. *Held*, that, by the bequest to his wife in the ninth clause of the net income of "my estate," the testator intended to give her the income of all his property, including that over which he had the power of appointment.

At the hearing of a suit by the trustees for a construction of the provisions above described, it appeared that throughout their married life the relations between the testator and his wife were uniformly happy and affectionate and that he held her in the highest regard and esteem; that the income from the net estate of the testator, exclusive of that over which he had a power of appointment, would be quite insufficient to maintain the real estate which was given in the

will to the widow outright in the manner in which the testator had been accustomed to maintain it during their married life. Each of the testator's sisters had received $1,000,000 under the same will under which the testator had been given a power of appointment over a fund of that amount, and his brother had received as much as had the testator. *Held*, that the construction given above was confirmed when the will was read in the light of the attendant circumstances.

BILL IN EQUITY, filed in the Supreme Judicial Court on January 13, 1919, by Fanny Holt Ames, Old Colony Trust Company and Daniel F. Buckley, executors and trustees under the will of William Hadwen Ames, late of Easton, for instructions.

The defendants include Fanny Holt Ames, the testator's widow, the children of his brother, Oakes Ames, his three sisters Evelyn Ames Hall, Anna Lee Ames Nowell and Susan Ames Taylor, and their children, such of whom as were minors being represented by guardians *ad litem*, the children of the testator's sister Lillian Ames Chatman, one of whom, a minor, was represented by a guardian *ad litem*, the Massachusetts Institute of Technology and Edward N. Goding, guardian *ad litem* for persons not ascertained or not in being who were or might become interested in the subject matter of the suit.

Upon certain issues of fact raised by the answers the suit was referred to a master. The issues between the parties and material facts found by the master are described in the opinion.

The eleventh clause of the will of William Hadwen Ames was as follows:

"After the payment of all preceding legacies, bequests and devises under this will, I give, devise and bequeath all the rest, residue and remainder of my property, real, personal and mixed, including all the property over which I have power of appointment and disposal, as follows, namely: I give, devise and bequeath to the child or children of my brother, Oakes Ames, who are living at the time of my decease, a one fifth share in said rest, remainder and residue of my estate.

"I give, devise and bequeath to my sister, Evelyn Ames Hall, a life interest in a one fifth share of the said rest, residue and remainder of my estate, and at her death, I give, devise and bequeath said one fifth share outright to her child or children, if any. If she leaves no child or children, then upon her death, said one fifth of my estate is devised and bequeathed to the other

four beneficiaries herein named to be added to their one fifth interest and they shall take such an addition to their share under the same conditions, in the same proportions and in the same way as that part of my property given to them in this clause. And in the case of the children of my sister, Lillian Ames·Chatman, should said addition go to them it shall be held as a life interest in trust as hereinafter provided, and upon the death of the last of said beneficiaries it shall go to the Massachusetts Institute of Technology.

[A third one-fifth was given to the testator's sister, Anna Lee Ames Nowell, for life with remainder to her children, the same language being used, except the name, as was used in the above provisions as to his sister Evelyn Ames Hall; and a fourth one fifth likewise was given to his sister Susan Ames Taylor and her children. The provision as to the fifth one fifth was as follows:] "It is my wish and will to give as hereinafter set forth to the child or children of my sister, Lillian Ames Chatman, who survive their father, Harry L. Chatman, a life income in the remaining one fifth of my said estate and upon the death of the last one of said children to give said fifth of my estate to the Massachusetts Institute of Technology.

"I, therefore, give, devise and bequeath to the trustees herein named the remaining one fifth interest of my estate to hold the same in trust during the lives of the beneficiaries herein designated for the following purposes, namely, to collect and hold the income from said one fifth of my estate (and on an addition thereto) until the death of said Harry L. Chatman and add the same to the principal and after his death to pay the net income of this trust fund to the then living child or children of my sister, Lillian Ames Chatman, in quarterly payments or at such times as meets the judgment of the Trustees, share and share alike, on their sole and separate receipts. And said life interest which I hereby give in trust to said children of my sister Lillian Ames Chatman, shall be free from the interference or control of their creditors or any one of them and such bequests shall not be alienated by them or any of them by anticipation. And it is my will that upon the death of any of said children that his or her share shall go to the surviving child or children under this trust and that upon the death of the last such child, then, and

in that event, I give, devise and bequeath said one fifth share of my property (with any addition thereto) to the Massachusetts Institute of Technology absolutely and outright with no restrictions except that it shall be known as the 'William H. Ames Fund' and I direct said Trustees to carry this provision of my will into effect."

The suit was reserved by *Pierce* J., for determination by the full court.

The case was argued at the bar in October, 1920, before *De Courcy, Crosby, Carroll, & Jenney,* JJ., and afterwards was submitted on briefs to all the Justices except *Rugg,* C. J.

*D. F. Buckley,* for the executors and trustees, stated the case.

*A. Marshall,* guardian *ad litem* for the minor children of Oakes Ames, (*E. N. Goding,* guardian *ad litem* for persons unascertained and not in being, with him).

*A. T. Johnson & C. R. Lamson,* (*W. I. Nottage* with them,) for certain defendants.

*C. F. Choate, Jr.,* for the widow.

DE COURCY, J. This is a bill in equity by the executors and trustees under the will of William H. Ames for instructions as to the disposition of the net income of the property in their hands. At the time of his death the testator owned outright real estate of the value of $89,732 and personal property inventoried at $452,101.11. In addition to this he had the power of appointment over property that was held in trust for him during his life under the will of his father, Oliver Ames. This trust fund was originally $500,000, and on the death of Oliver's widow, in March, 1917, it was increased to about $1,400,000. The issue between the widow, Fanny Holt Ames, and the other defendants (hereinafter referred to as the defendants) is whether the testator exercised the power in the ninth clause of his will, and appointed to his widow the net income not only of the property which he owned outright, but also of the trust fund under his father's will.

The important provisions of the will are as follows: In the preamble he declares:

"I intend by this will and instrument to dispose of all my property of every kind of which at my death I may be seized or possessed, or over which I may then have any power of disposition or disposal whatsoever, including the trust fund now held

for my benefit by the Trustees of my father's estate, and the trust fund which is added to said trust fund by the death of my mother. Meaning and intending hereby to exercise all the powers of appointment and disposal given to me by the will of my father as above referred to, and I declare in connection herewith that I have no children born after the date of my father's will."

The first eight clauses appoint executors and trustees, and make certain specific bequests. The ninth is as follows:.

"Should my wife, Fanny Holt Ames, survive me I give, devise and bequeath to her as in this and the two following paragraphs, — All my real estate absolutely.

"I give, devise and bequeath to my wife, Fanny Holt Ames, all the furnishings, furniture, works of art, silver, glass, china, books, jewelry, ware, personal effects, bric-a-brac, household goods, and everything of this nature in my houses, the one in Easton (North) and the one in Boston, No. 267 Commonwealth Avenue, and also all my carriages, automobiles, all the machinery in my factory on Oliver Street in said Easton (North) and all the personal property of every kind and nature in use on either of my said places in Easton (North) and in Boston.

"After the payment of all preceding legacies and bequests in this will, I give and bequeath to my wife, Fanny Holt Ames, for and during her life, except as hereinafter provided, the net income of my estate to be paid to her quarterly or otherwise as convenient to the Executors and Trustees, herein named, subject, however, to this condition, that in the event of her marriage, said income to her shall cease and in lieu thereof I give and bequeath to her Fifty Thousand (50,000) Dollars in cash or in securities and my remaining estate shall then be distributed as hereinafter provided."

The tenth clause contains legacies to his wife's relations.

The eleventh clause provides:

"After the payment of all preceding legacies, bequests and devises under this will, I give, devise and bequeath all the rest, residue and remainder of my property, real, personal and mixed, including all the property over which I have power of appointment and disposal, as follows, namely:

"I give, devise and bequeath to the child or children of my brother Oakes Ames, who are living at the time of my decease,

a one fifth share in said rest, remainder and residue of my estate."

The remainder of the clause giving the other four fifths to his four sisters and their children, is described on page 272.

As the testator had no children born after the date of his father's will, he was empowered by the sixth clause of that testament to dispose of his share of said trust property "by such instrument and in such manner as he may see fit." This general power could be well executed by a residuary clause even if the power were not mentioned in the will. *Thompson* v. *Pew,* 214 Mass. 520, 523. And, as was said in *Stone* v. *Forbes,* 189 Mass. 163, 169: "In regard to general powers the rule now is that a general devise of property real or personal is presumed to include a general power of appointment unless the contrary appears from the will." See also *Amory* v. *Meredith,* 7 Allen, 397, 400; *Willard* v. *Ware,* 10 Allen, 263; *Sewall* v. *Wilmer,* 132 Mass. 131. By the general bequest to his wife in the ninth clause, of the net income of "my estate," the testator apparently intended to give her the income of all his property, including that over which he had the power of appointment. Speaking accurately, as donee of a power he was not legally the owner of the property appointed. *Shattuck* v. *Burrage,* 229 Mass. 448. But, as was said in *Howland* v. *Parker,* 200 Mass. 204, 207: "'The reason which has led to the establishment of the general rule which now prevails in England . . . as well as here, [is] that where one has the use and income of land during life with a power of disposition after death, it is natural for him to consider and treat it as his own property.' . . . Not only that, but it is not unnatural for him to speak of it as his own property in making his will."

This view, that the testator intended to include the trust property in the words "my estate" in the ninth clause, is strongly confirmed by his use of the same words in other parts of the will. They appear a number of times in the eleventh clause, where plainly "my estate" embraces the trust fund. And in the twelfth clause, where compensation is provided for the executors, it is equally clear that by "my estate" he means to include both the trust fund and his separate property. In these circumstances the rule of construction is applicable that "Where a word is used in one sense in one part of a will, and there is nothing to indicate

a different meaning when the same word is used in another part, it may be presumed that the same meaning was intended." *Russell* v. *Lilly*, 213 Mass. 529, 530. *Upham* v. *Parker*, 220 Mass. 454.

The eleventh is a general residuary clause, and thereby the principal of the trust fund, and the other property of the testator not specifically bequeathed, is disposed of finally, as above set forth, after the death of his widow. It must be considered in connection with the ninth, which provides that, in the event of the remarriage of the testator's widow, she should receive $50,000 in lieu of the income therein provided and that "my remaining estate shall then be distributed as hereinafter provided." Accordingly the eleventh clause does not purport to vest property in possession until the widow shall have died or remarried. If the construction urged by the defendants, that the testator intended to exercise the power by the eleventh clause alone, were adopted, the income accruing from the trust property until the time of the remarriage or death of the widow would not be appointed to any one, and might go as undevised property. A construction of the will that would result in such intestacy or failure to appoint should not be adopted unless plainly required. This consideration strengthens the conclusion that the words "my estate" in the ninth clause relate to all the property which is given in the subsequent paragraphs. The eleventh clause, so construed, is in harmony with our interpretation of the ninth.

A reading of the will in the light of the attendant circumstances at the time when it was made confirms our opinion that the testator intended to exercise the power by the ninth clause, also, and to include therein the income of his entire separate and trust estate. As found by the master: "Throughout their married life the relations between the testator and his wife were uniformly happy and affectionate, and he held her in the highest regard and esteem." By said ninth clause he devised to her in fee all his real estate, which included his city house on Commonwealth Avenue, Boston, and his large country place at North Easton. He thereby gave her also, as above stated, "all the furnishings, furniture, works of art, silver, glass, china, books, jewelry, ware, personal effects, bric-a-brac, household goods, and everything of this nature" in both houses, as well as his carriages, automobiles

and "all the personal property of every kind and nature in use on either of my said places in Easton (North) and in Boston." It seems apparent that he contemplated that his widow should occupy these winter and summer homes after his death, as she had during their marriage. The North Easton estate contained one hundred and sixty-two acres of land under intensive cultivation, and required a number of employees. The same servants, eight in number, had been regularly employed in the two houses, being transferred from one house to the other as occasion required. During their married life the testator had lived at the rate of $50,000 to $60,000 a year, exclusive of taxes and office expenses. The master has found "from the facts hereinbefore found with reference to the value of the assets of the testator's estate owned by him outright at the time of his death, and the amounts fairly chargeable against the same by way of debts, legacies, taxes, expenses of administration, or otherwise, it is evident that the income of the balance remaining in said estate after the payment of these charges, however well invested, would be quite insufficient to enable his widow to maintain the Boston house and the North Easton estate in the manner in which the testator had been accustomed to maintain them during their married life." Elaborate arguments and statistics have been presented to us bearing on the probable net income of the testator's separate estate. Debts, specific bequests, taxes and estimated charges of administration amount to almost $200,000, aside from certain contingent liabilities, upon which the master is of opinion that the estate will not ultimately lose much, if anything. There are also certain assets in the Oliver Ames estate in which this estate will share; but they have not been liquidated in twenty-five years, and it is doubtful when they will be paid over. According to figures presented by counsel for the widow, the net income from what is left of the testator's private estate will not exceed $10,000 a year; while on the calculation made by counsel for the defendants it may be about $30,000. Without analyzing the figures in detail, it is enough to say that the master's finding was not unwarranted. In short, the circumstances attending the making of the will strongly support the contention of the widow that her husband intended to give her the entire income so long as she should remain his widow, rather than to give that income, as well as the

remainder, to his sisters, each of whom had received a million dollars from the Oliver Ames estate, and to the children of his brother who had received as much as the testator from that estate.

We have not found it necessary to consider whether any of the testimony of oral and written declarations made by the testator bearing directly on his meaning and purpose was properly admitted by the master. See *Foster* v. *Smith,* 156 Mass. 379; *Polsey* v. *Newton,* 199 Mass. 450; *Sibley* v. *Maxwell,* 203 Mass. 94, 104. In determining whether he exercised his power of appointment in the ninth clause of his will, as well as in the eleventh, we have confined ourselves to the language of the will itself, read as a whole in the light of the attendant circumstances at the time when it was made.

Able arguments have been addressed to us in support of the contention of the defendants, — that the power of appointment was not exercised by the ninth clause of the will, and that William H. Ames did not intend to give to his wife the income of the trust property. But after full consideration we have come to the conclusion that under the ninth clause of the will the widow, Fanny Holt Ames, is entitled to the net income of the property in the hands of the plaintiffs, including not only that which the testator owned outright, but also the trust fund under his father's will as to which he had a power of appointment; and the plaintiffs are to be so instructed.

Costs as between solicitor and client are to be in the discretion of a single justice.

*Decree accordingly.*