ARTHUR S. DAVIS, administrator, & others *vs.* GUSTAVUS CLAPP, executor, & others.

Middlesex.	March 23, 1922. — June 28, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Devise and Legacy,* Absolute or contingent.

The first article of a will named the testator's wife as the sole executrix and gave to her "all and every property, real and personal, . . . for her sole use and benefit, and free from the control or interference of any person or persons whatsoever, subject, after her death to the payment of certain legacies and bequests herein named, or at her option to pay them in whole or in part before." Subsequent clauses contained sundry legacies. By the sixth article legacies of $100 each were given to servants employed by the testator and his wife at his death, who had been so employed one year or more, "and not subject to the clause, leaving all legacies payable only after my death at the option of my wife." Article 9 stated that the testator already had conveyed Florida property to his wife to prevent it from being "administered upon by any other person, as might be done under the laws of" Florida. In article 11, provision was made for executors in case his wife predeceased him "in accordance with a similar clause in the will of my said wife." Article 12 stated the testator's "desire" that, before the division of any residue "that may be left after the payment of all the bequests herein made," his wife "shall dispose of the same as she may see fit; leaving it to her discretion." Article 14 read: "Under Article 1st. I have stated that all the bequests herein made shall only be paid after my death, at her option, I confirm the same feeling assured that she will act for the best under all circumstances, & carry out to the best of her judgment everything relating to the disposition of my estate." After the death of the widow, the administrator with the will annexed of the estate of the testator not already administered and certain legatees by a suit in equity sought to compel the executor of the will of the widow to pay legacies not paid by her in her lifetime. *Held,* that

(1) The only option given to the widow by the language of the first article related to the time of the payment of the absolute gifts to the plaintiffs;

(2) The word "only" in article 6 modified the words "after my death" and not the more remote words, "at the option of my wife;"

(3) Article 9 did not modify article 1;

(4) Article 12 expressly recognized the plaintiff's legacies and dealt only with the residue remaining after their payment, and the limited power of disposal given to the testator's wife by this article showed that he had not already given to her the complete title to all his property;

(5) The inaccurate reference to article 1 in article 14 did not purport to modify or change article 1, but made merely a descriptive reference to it;

(6) The intention of the testator was that the plaintiff legatees should take absolute gifts, which became payable upon the death of the widow.

BILL IN EQUITY, filed in the Supreme Judicial Court on January 6, 1922, by the administrator with the will annexed of John Littlejohn Wilson, late of Framingham, certain legatees under the second article of that will and personal representatives of certain others who had deceased, against the executor of the will of Frances Lewis Wilson, widow of John Littlejohn Wilson, who had been the executrix of his will, and others, to compel a recognition of legacies made to the plaintiffs in the will of John Littlejohn Wilson, which the defendants contended were conditional upon an option to be exercised by his widow.

Material portions of the will of John Littlejohn Wilson were as follows:

"Article 1st. I hereby name, constitute and appoint my beloved wife Frances Lewis Wilson, (christened Frances Mary Priscilla) to be my sole executrix without her being required to give bonds for the faithful execution of this instrument, do give and bequeath unto her, all and every property, real and personal, including all household articles, pictures, furniture, silver, wearing apparel horses, carriages &c. and everything apertaining thereto, that I may die possessed of, or become heir to, for her sole use and benefit, and free from the control or interference of any person or persons whatsoever, subject, after her death to the payment of certain legacies and bequests herein named, or at her option to pay them in whole or in part before."

"Article 2nd" contained the legacies in question amounting in all to $80,000.

"Article 6. I give and bequeath unto such servants and employees as may have been in our service, one year or more, and

still be in it, at the time of my death, and not subject to the clause, leaving all legacies payable only after my death at the option of my wife, the sum of one hundred dollars each."

"Article 9. Under date of 19 February 1881, I executed & had recorded at St. Augustine, Florida, a deed, conveying to my wife Frances L. Wilson all my real and personal property, declaring her to be my sole Executrix: this was done with the view of preventing my estate after my death, from being administered upon by any other person, as might be done under the laws of the State of Florida, without such notice, & hereby confirm the same."

By Article 10, $200 was given to a cemetery for perpetual care of a burial lot therein. The closing words of the article were: "if this sum should be insufficient, I request my wife, to add what may be required."

"Article 11. In the event of the decease of my wife Frances, before me, or at or about the same time, and I inherit from her, I hereby name constitute and appoint Richard C. Humphreys of Dorchester District, Massachusetts my Executor, (and in accordance with a similar clause in the will of my said wife) together with her two nieces, Mary A. Clapp and Marian daughter of my deceased Brother in law Abiel S. Lewis, as Co-Executrixes with Mr. Humphreys, without him or them being required to give other than their personal bonds, for the faithful execution of this trust, and with equal power to act with him; and in the event of the death of the Executor or either or both of the Executrixes, I name first, James H. Humphreys and second, James J. Valentine of Framingham as substitutes in their places, either one or both of them as may be necessary.

"Article 12. I desire before the division of any surplus or reside [sic] of my estate that may be left after the payment of all of the bequests herein made, that my wife Frances shall dispose of the same as she may see fit; leaving it at her discretion."

"Article 14. Under article 1st. I have stated that all the bequests herein made shall only be paid after my death, at her option, I confirm the same feeling assured that she will act for the best under all circumstances, & carry out to the best of her judgment everything relating to the disposition of my estate."

"Article 18. I have recently purchased in St. Augustine a

house and lot, which I intend to give to the Free Public Library of that City, as soon as I have made certain changes, to adapt it to the uses of the Library, and shall as soon as they are completed shall convey it by deed to the Trustees I have named in it, so that this property will form no part of my estate, and in the event of my death before the transfer shall have been made, I request my wife Frances to carry out my intentions."

The suit was reported to the full court by *Crosby,* J., for determination upon the pleadings and certain agreed statements of fact.

*E. A. Whitman,* for the defendants.

*W. M. Noble & A. S. Davis,* for the plaintiffs.

DE COURCY, J. The object of this suit in equity is to enforce payment of certain bequests given by the will of John L. Wilson to his relatives. It comes before us, on the report of a single justice, for interpretation of the will so far as it relates to the validity of these legacies. In substance, the contention of the plaintiffs is that the testator gave to these legatees absolute gifts, payable upon the death of the widow unless she should at her option pay them during her lifetime. The defendants claim that the testator left the payment of said legacies wholly to the discretion of his wife, and that she never exercised her option in favor of the legatees.

In the first article of his will, he gives to his wife all his property, for her sole use and benefit, "subject, after her death to the payment of certain legacies and bequests herein named, or at her option to pay them in whole or in part before." Then follow the bequests to his blood relatives, which have not been paid and are the subject matter of this litigation. If said first article expresses the true intent of the testator, it seems plain that the only option given to the widow related to the time of payment of absolute gifts; that it was not left optional with her to decide whether or not they should ever be paid. The only uncertainty is whether the intention so plainly expressed in this article, is changed or modified by the subsequent articles 6, 9, 12 and 14.

In Article 6 the testator makes bequests to his household servants, "not subject to the clause, leaving all legacies payable only after my death at the option of my wife." It seems to us

that the word "only" modifies "after my death," and not the more remote words "at the option of my wife." Article 1, to which he was referring, made the legacies to his relatives payable absolutely after the death of his wife. They were payable after his death, meaning thereby during the period between his death and hers, — only at her option. Thus construed this article is not inconsistent with the first.

Nor is there anything in Article 9 that modifies the first. The instrument therein referred to is not a deed, but apparently a notice or caveat. His purpose in Article 9, confirming said instrument, was merely to prevent his Florida estate from being administered upon by a Florida administrator other than his wife.

Article 12 reads: "I desire before the division of any surplus or reside [residue] of my estate that may be left after the payment of all of the bequests herein made, that my wife Frances shall dispose of the same as she may see fit; leaving it at her discretion." This article expressly recognizes the legacies in controversy, and deals only with the surplus or residue remaining after payment of them. Further, the limited power of disposal given to his wife by this article shows that the testator had not already given to her the complete title to all his property, as is assumed by the defendants. It may be added that in giving her discretionary power to dispose of that surplus he refers to it as his estate, and not as hers.

In Article 14 is the following language: "Under Article 1st. I have stated that all the bequests herein made shall only be paid after my death, at her option." It is to be noted that this language does not purport to modify or change the first article; he makes a merely descriptive reference to it. If he had intended to modify the definite and formal expression of his intention as expressed in that article it is not likely that he would do so by a mere indefinite and passing reference to it. Even his direct reference to the language thereof is inaccurate. What he said in the earlier paragraph was not "shall only be paid after my death" but "after her death." It is the case of a layman undertaking to write his own will. What he apparently meant by Article 14 was to explain that he did not make the legacies payable absolutely at his death, nor postpone payment necessarily

until his wife's death, but that he left it optional with her to pay them during the period between his death and her death, feeling confident that she would do what seemed best in the circumstances as they might develop during that period. This construction is in harmony with and gives effect to the other provisions of the will. Especially true is this of Article 11, wherein the testator anticipated the possibility that he might outlive his wife. He assumed nevertheless that the gifts to his relatives would still stand as absolute, and that they did not depend for their validity on the exercise of her volition.

As the intention of the testator seems clear from the language of the entire will, it is unnecessary to consider the facts agreed upon relating to the family history and other matters. And in view of our conclusion that the "option" given to the widow related only to the time of payment, it is equally unnecessary to review the evidence tending to show that even if the option related to the validity of the legacies, she had exercised it in favor of the legatees. *Ames* v. *Ames*, 238 Mass. 270, 278. In our opinion it was his intention that the plaintiff legatees should take absolute gifts, which became payable upon the death of the widow. "The cardinal rule in the interpretation of wills, to which all other rules must bend, is that the intention of the testator shall prevail, provided that it is consistent with the rules of law." *McCurdy* v. *McCallum*, 186 Mass. 464, 469. *Ware* v. *Minot*, 202 Mass. 512, 517. The language of this will distinguishes it from cases like *Knibbs* v. *Knibbs*, 236 Mass. 182 and *Myrick* v. *Stowe*, 240 Mass. 14, where after an absolute and complete ownership of property had been given, a limitation over which was inconsistent therewith was held void. See *Davis* v. *Davis*, 225 Mass. 311. Nor is our conclusion inconsistent with *Aldrich* v. *Aldrich*, 172 Mass. 101, where a bill was unsuccessfully brought to establish a precatory trust.

As what we have said with reference to the interpretation of the will disposes of the only question now before us, a decree is to be entered in accordance with this opinion, and the case remanded to the county court for further proceedings. Costs are to await the final decree, and then be determined in the discretion of the single justice.

*Ordered accordingly.*