JOHN J. MAHONEY, JR., *vs.* HARLEY PRIVATE HOSPITAL, INC.

Suffolk.    December 11, 1931. — April 16, 1932.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Negligence,* Of proprietor of private hospital, Res ipsa loquitur. *Evidence,* Admitted without objection, Absence of record, Presumptions and burden of proof.

At the trial of an action for personal injuries against a corporation conducting a private hospital, there was evidence that the plaintiff was born at the hospital; that he was in perfect condition in the evening of a day about a week later; that the next morning a broken blister was discovered on his neck which could have been caused by a burn; that during the night he was in the nursery, which was in the exclusive control of nurses who were employed by the defendant and whose duty it was to record any happening to the plaintiff; that they made no record nor report of the appearance of the blister during the night; that there were objects in the nursery which might occasion the burning of the plaintiff; that the physician attending the · plaintiff and his mother was heard to state that the plaintiff had been burned while being bathed by a nurse; and that an officer of the defendant thereafter refused a request of the plaintiff's father that he be allowed to see the defendant's record respecting the child. There was testimony by experts that the blister was caused by a burn and also that it was caused by a contagious disease from which some other babies were suffering, they having been isolated as soon as it was discovered.    The defendant's record for the night in question was not introduced in evidence.    *Held,* that
(1) The defendant, having the exclusive control of the plaintiff during the night in question, was bound to exercise reasonable care to avoid injury to him, aside from the defendant's contract with the plaintiff's mother;
(2) The testimony concerning the attending doctor's remark, although it was hearsay, having been admitted without objection was entitled to its full probative value;
(3) An inference was warranted that the failure of the night nurses to record or report the appearance of the blister showed a consciousness on their part that the blister was a result of their fault;

(4) In the absence of the record for the night in question, the jury were not bound to believe that no record was kept or that, if one were kept, it did not contain an entry prejudicial to the defendant;

(5) Although the doctrine *res ipsa loquitur* was not applicable, findings were warranted that a burn and not the contagious disease caused the blister and that the burn resulted from negligence on the part of the defendant's nurses;

(6) A verdict for the plaintiff was warranted.

TORT.   Writ dated January 4, 1928.

The action was tried in the Superior Court before *Brown,* J.   There was evidence that the hospital conducted by the defendant was a private hospital.   Other material evidence is stated in the opinion.   The judge denied a motion that a verdict be ordered for the defendant.   There was a verdict for the plaintiff in the sum of $4,500.   The defendant alleged exceptions.

*L. Powers,* for the defendant.

*J. J. Donahue,* for the plaintiff.

WAIT, J.   The single question presented is whether there was error in a refusal to direct a verdict for the defendant in this action for negligent injury to the infant plaintiff by some one for whom the defendant was responsible, and in refusing to charge that there was no evidence that if the plaintiff received a burn while in the hospital, it was received through negligence of the defendant, its servants or agents.

There was evidence that the plaintiff's mother was admitted to the defendant's hospital, and contracted with it for the care of the infant whose birth was expected.   The child was born on November 4, 1927.   He was in perfect condition at 10 P.M. on November 12, 1927.   At 2 A.M. on November 13, when brought to his mother for nursing, a ruptured "bleb" or broken blister was found on his neck which could have been caused by a burn.   The mother was in a room on the first floor of the hospital.   The child was kept with fifteen to twenty other babies in a room on the second floor, from which he was brought to the mother to be nursed.   In this room, and at all times except when with the mother, he was exclusively in the care and control of the defendant and its employees.   The room was visited

only by doctors having patients at the hospital and by employees of the defendant. On the night of November 12 to 13 it was exclusively in charge of two nurses in the defendant's employ. It was their duty to record any happening to the child. No record of the appearance of the bleb during the night in question was made by the nurses in charge. On the morning of November 13 at 6 A.M. the mother requested a nurse to notify her husband and Dr. Leete, her attending physician, that the baby had been burned. No message was received by either. About November 21 the father requested the defendant's treasurer to be permitted to see the records. He was refused. Dr. Leete saw the child on the afternoon of November 12 when he found him perfectly normal, and on the afternoon of November 13 when he found a second degree burn on his neck and left shoulder about three by four inches in area. He was given no information by the nurses in regard to what had happened to the child. The nursery was heated by a steam radiator three feet high of nine or ten coils, between two windows. A desk backed up to the radiator. The room was piped with hot water under thermostatic control. A hospital rule forbade the use of hot water bottles unless upon written order of the physician in charge of the baby. No such order was given by Dr. Leete. The bill of exceptions recites that "there was no evidence that a hot water bottle was used." The nurse who relieved the night nurses at 6 A.M. on November 13 testified that when she bathed the baby at 8 A.M. she noticed the ruptured bleb which had not been present when she bathed him on November 12; and that neither night nurse reported to her anything relative to burn or blister, nor made written report about it; but that on the afternoon of November 13 she heard Dr. Leete say the baby had been burned while being bathed. A day supervisor at the hospital gave testimony from which the jury could have found that she, also, heard Dr. Leete say that the baby was scalded by a nurse, and that the night nurses had made no report of a blister or burn on him. Records of the hospital showed the keeping of a sheet for a "Day Record" on one side and a "Night Record" on

the other on which entries from 6 A.M. to 8 P.M. in the day and from 8 P.M. to 7 A.M. in the night could be made, and which was labelled "Treatment and Symptom Record." Sheets of this record for November 7, 13, 14 and 15 were put in evidence, but there were no sheets from November 8 to 12, inclusive. A printed clinical chart of daily entries as to respiration, pulse and temperature from November 4 to 15, inclusive, was in evidence; and another for the dates November 4 to November 14, inclusive, as to weight, and stools, with occasional entries under a heading, "Remarks," was also introduced. Under "Remarks" on November 13 appeared, "large bleb on neck." In answer to interrogatories the defendant admitted that about November 13 the plaintiff "was in charge of and in control of nurses employed by" it and "in such service acting" in its behalf and on its account; and stated the detail of care required in full discharge of their duty to be: "Bath at 7 A.M.; feeding every two and one-half hours during day and during night at 10 P.M., 2 and 6 A.M. In the meantime, child kept in crib in nursery receiving usual attention."

In the hospital on November 14 there were three babies, then or shortly thereafter, suffering from impetigo, a highly contagious disease which sometimes takes a form called pemphigus neonatorum in which blisters are produced rapidly. These babies were isolated as soon as the impetigo was discovered. Doctors who had other patients at the hospital, who saw the plaintiff after the morning of November 13, and who, at their practice had seen no cases or but one or two cases of pemphigus neonatorum, differed in opinion whether he was suffering from that disease or had received a burn. A skin specialist, who saw the plaintiff shortly after the mother's return to her home, which was on November 15, testified that, in his opinion, the bleb was a burn and not the disease; while another who testified in reply to an hypothetical question, gave his opinion that it was the disease and not a burn.

The two night nurses were not produced at the trial by the defendant, nor was testimony from them adduced. Both had left the defendant's employ long before the trial,

but not before suit was brought in January of 1928. There was no evidence that their whereabouts were known to either party at the time of the trial.

In this state of the evidence there was no error in refusing the motion to order a verdict for the defendant and the defendant's request for instructions. It is manifest findings would be warranted that the plaintiff was in the exclusive care and control of the defendant's servants between 10 P.M. of November 12 and 2 A.M. of November 13, 1927; and that a duty was owed him to use appropriate care to refrain from injury to him — a duty which did not arise solely from contract with the mother, but was inherent in the assumption of control by the defendant. See *Lowner* v. *New York, New Haven & Hartford Railroad,* 175 Mass. 166. It is equally manifest that something happened between those hours which resulted in the ruptured blister, something about which the nurses should have known and about which they should have made a report. If it was the appearance of a symptom of disease, it should have been noted. If it was the happening of an accident, equally it should have been noted. No note was made; and no evidence of any statement by them appears, unless it is inferred from the evidence of Dr. Leete's remarks. No objection was interposed to the introduction of the testimony of his statement. The defendant cannot now require that it be disregarded. Hearsay, once admitted, may be weighed with the other evidence, and given any evidentiary value which it may possess. *Damon* v. *Carrol,* 163 Mass. 404. *Peterson* v. *Meekins, Packard & Wheat Inc.* 261 Mass. 336, 339. *DuBois* v. *Powdrell,* 271 Mass. 394, 397. We think an inference possible that Dr. Leete had heard scalding while bathing given as an explanation from one or other of the night nurses. Inquiry from them on his part would, at least, be justifiable, and might be thought to be imperative. Jurors might well infer that the failure to report or to record the happening argued a consciousness of fault on the part of the nurses which would imply that the appearance of the bleb was not an inexplicable indication of disease or a result of an innocent event, but a mani-

festation of injurious action for which one or other or both of them were responsible.  The jurors cannot be held to be bound to believe that the sheets of the "Treatment and Symptom" records of November 8 to 12, inclusive, were not kept; or, if kept, contained no compromising entry, especially in view of the refusal to exhibit records about November 21.  The presence in the nursery of objects which might occasion a burn was abundantly shown.  Whether the injury resulted from a burn or from disease was matter of fact to be decided upon conflicting evidence.  With regard to this, the plaintiff was entitled to a jury's decision.

The judge ruled properly that this was not a case of *res ipsa loquitur*, i.e., where the happening of the event, in and of itself, was evidence of negligence.  The happening of the formation of a blister did not of itself indicate negligence. It could be explained by the existence of the disease, and by other things consistent with due care in the ordinary course of experience.

The mere existence of a burn was not of itself enough to establish liability;  but we cannot properly say that the credible testimony with legitimate inferences in the circumstances could not be found to exclude all but reasonable findings that a burn existed which had been caused by negligent action of the defendant's servants.  Decisions such as *Childs* v. *American Express Co.* 197 Mass. 337, *Bigwood* v. *Boston & Northern Street Railway*, 209 Mass. 345, *Traverse* v. *Wing*, 260 Mass. 527, and *Morris* v. *Weene*, 258 Mass. 178, are not controlling here.

<div align="right">

*Exceptions overruled.*