AGRICULTURAL NATIONAL BANK OF PITTSFIELD & others, trustees, *vs.* MINNIE SCHWARTZ & others.

Berkshire.     September 20, 1949. — March 8, 1950.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Devise and Legacy*, Next of kin, Class, Extrinsic evidence affecting construction, Income undistributed.  *Evidence*, Extrinsic affecting writing, Admitted without objection.  *Words*, "Next of kin."

In this Commonwealth it is settled that the words "next of kin" of a designated person, when used in a will, must be given their original and primary meaning of nearest blood relatives where there is nothing in the will tending to show that those words were used in a different sense.

Upon construction of an entire will, the words "next of kin," as used in a provision directing that the principal of a trust be divided at its termination "equally among those persons who would have been the next of kin of" the testator and of his wife, who had predeceased him, "had we died as of the date fixed for such distribution," with no reference to any statute governing the succession to intestate property, meant the nearest blood relatives of both the testator and his wife at the date of termination, and that distribution should be made to them per capita; upon the facts, distribution was directed to be made in equal shares to a living sister of the testator's wife and to living nieces and nephews of the testator and the personal representatives of any of his nieces and nephews who had died after the date of termination.

At a hearing upon the construction of unambiguous words in a will which had acquired a well established meaning at the time the will was executed, a letter of the attorney who drafted the will, written after the testator's death to a beneficiary thereunder, stating that he had advised the testator that the meaning of the words was other than that already established by law, must be disregarded even if admitted in evidence without objection.

A trust provision in a will as to payment of income wholly in the discretion of the trustee was held not to require that surplus income be added to principal and be distributed with it at the termination of the trust; and therefore such surplus was ordered distributed under the residuary clause of the will.

PETITION, filed in the Probate Court for the county of Berkshire on February 4, 1949.

The case was heard by *Hanlon, J.*

*J. M. Rosenthal*, stated the case.

*F. M. Myers*, for the respondents Benedict R. Harrow and others.

*H. Serper* of New York, (*J. A. Bowes* with him,) for the respondent Minnie Schwartz.

*B. R. Wolf* of New York, for the respondents Anna L. Goldstein and others.

*L. S. Cain*, (*A. W. Chesney, R. A. Lewis & R. T. Capeless* with him,) for the respondents Bertha Culker and others.

*M. Harawitz* of New York, for the respondents Milton Harawitz and another.

*J. I. Donna, J. J. Donna & C. E. Donna*, for the respondent Molly H. Wilson, submitted a brief.

RONAN, J. This is a petition filed by the trustees under the will of Harry Blank seeking instructions respecting to whom and in what proportions the principal and undistributed income of a trust created by his will should be paid.

The testator, whose wife, Eva Blank, predeceased him, died November 7, 1938, leaving no issue. He had four sisters and two brothers and his wife had five sisters and five brothers, and all of these sixteen except Minnie Schwartz, a sister of the testator's wife, died prior to the date fixed for the termination of the trust. By the fifth clause of the will, he left in trust a certain parcel of real estate, formerly owned by his wife, and four other parcels. The pertinent provisions are contained in subparagraphs 2 and 4 which, in so far as material, read as follows: "2. To pay over said income for the benefit of any of the next of kin of my late wife or of myself who may from time to time be in need of financial assistance and the amount of any such payment and the beneficiary thereof to be determined by said trustees in their sole discretion. It is my hope that my said trustees in distributing said income will bear in mind the needs of any relatives of myself or my said wife, of whatever degree, who may be residing outside of the United States of America." "4. Said trust shall continue for ten years after the date of my death and at the expiration of said period I

direct my said trustees to convert the principal fund into cash and to divide the net proceeds resulting therefrom equally among those persons who would have been the next of kin of myself and my late wife had we died as of the date fixed for such distribution. . . ." This subparagraph further authorized the trustees to extend this ten year period for not more than three years if more cash could then be realized from a sale of the trust property. The Probate Court instructed the trustees that the words "next of kin" in subparagraph 4 included all those persons to whom the property would descend from either the testator or his wife under the provisions of G. L. (Ter. Ed.) c. 190, § 3 (5); that the principal and undistributed income should be divided into sixteen equal shares; and that one of these shares should be paid to Minnie Schwartz, one share to the children of each of the deceased brothers and sisters of Eva Blank, and one share to the children of each of the deceased brothers and sisters of the testator. Minnie Schwartz and the residuary legatees appealed from this decree.

The persons who are to share in the principal of the trust are "the next of kin of myself and my late wife had we died as of the date fixed for such distribution." The persons who were to take could not be ascertained until the time had arrived for ending the trust and distributing the property, and only those then alive could share therein. *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, 532. *Worcester County Trust Co.* v. *Marble*, 316 Mass. 294, 299. *McKay* v. *Audubon Society, Inc.* 318 Mass. 482, 487. The question is who were the next of kin of the testator and his wife at that time. On one side, it is argued that the common understanding and popular meaning of these words, in the absence of anything to the contrary appearing in the will, are those persons who take under the statute of distributions. The reasons for this construction have been frequently set forth in some of the decisions of the many jurisdictions which have held that a testator by the use of such terms intends that his estate shall pass to those who will take as though he died intestate. *Kimbrough* v. *Dick-*

*inson,* 247 Ala. 324. *Close* v. *Benham,* 97 Conn. 102. *Low-rimore* v. *First Savings & Trust Co.* 102 Fla. 751. *Wilcox* v. *Bierd,* 330 Ill. 571. *Coss* v. *Goembel,* 210 Minn. 32. *St. Louis Union Trust Co.* v. *Kaltenbach,* 353 Mo. 1114. *Carter* v. *Thayer-Martin,* 122 N. J. Eq. 262. *Matter of Burk,* 298 N. Y. 450. *Godfrey* v. *Epple,* 100 Ohio St. 447. Restatement: Property, § 307.

It is, however, settled in this Commonwealth, adopting the early English view, that the original and primary meaning of next of kin is the nearest blood relatives of the designated person where there is nothing in the will tending to show these words were used in a different sense. It was said in *Swasey* v. *Jacques,* 144 Mass. 135, 138, "It is certainly difficult to distinguish between the expressions 'next of kin,' 'nearest of kin,' 'nearest kindred,' and 'nearest blood relations,' and primarily the words indicate the nearest degree of consanguinity, and they are perhaps more frequently used in this sense than in any other. What little recent authority there is beyond that of the English courts supports the English view; and, on the whole, we are inclined to adopt it. . . . There is nothing in this will which controls or modifies the meaning of the words 'next of kin.'" This interpretation of these words has been uniformly followed in decisions written by eminent judges who were fully aware of this conflict of authority and preferred to follow the rule of the *Swasey* case and that earlier laid down in *Haraden* v. *Larrabee,* 113 Mass. 430. *Fargo* v. *Miller,* 150 Mass. 225. *Keniston* v. *Mayhew,* 169 Mass. 166. *Leonard* v. *Haworth,* 171 Mass. 496. *Kelley's Case,* 222 Mass. 538. *Bailey* v. *Smith,* 222 Mass. 600, 602. *Makller* v. *Independent Workmen's Circle of America, Inc.* 255 Mass. 252. The principle has become too firmly embedded in our jurisprudence to be changed. *Mabardy* v. *McHugh,* 202 Mass. 148, 151–152. *Vinton* v. *Pratt,* 228 Mass. 468, 470. *Salter* v. *Beal,* 321 Mass. 105, 107–108. *Newton-Waltham Bank & Trust Co.* v. *Miller, ante,* 330.

The testator made substantial gifts to his own kindred and to those of his wife. Some of the bequests were to be

paid to the children of a legatee or to the estate of the latter if he predeceased the testator, and another bequest was made to the children of a deceased brother as a class. He knew how to describe accurately the ultimate beneficiaries in a situation where some of his brothers and sisters and those of his wife had already died and where some of those surviving him were likely to die before the termination of the trust. The general plan of the will was in the main to favor the blood relatives of himself and those of his wife. The words next of kin appear but twice in the will, once with reference to the distribution of the trust income and again in providing for the distribution of the trust property. The Probate Court in 1940 entered a decree to the effect that the next of kin in subparagraph 2 of the fifth clause providing for the payment of income were "the nearest blood relatives of the testator and his deceased wife Eva Blank," and that the trustees had power to distribute the income to any relatives of the testator or his wife of whatever degree who might be residing outside of this country if they were in need of assistance. There was no appeal from this decree. We need not, however, decide whether it binds the parties in this proceeding as to the meaning to be given to the words next of kin (see 63 Harv. L. Rev. 504) for it is plain in subparagraph 2 that the testator desired the income to go to such of the next of kin of himself and of his wife as the trustees deemed in need of assistance. He knew that if he stopped there only the nearest blood relatives could share in the income. He did not desire to have the class so limited, and so he extended the class by directing his trustees to aid any of the blood relatives of either himself or his wife, "of whatever degree," who may be residing outside of the United States, thus making a clear distinction between next of kin and those standing in a more remote degree of consanguinity to himself or his wife. Consequently, whether the decree is binding upon the parties is immaterial, for we would construe the words next of kin as did the judge in the decree of 1940 even if no such decree had been entered.

We have already indicated that the words next of kin as they appear in the subparagraph providing for the payment of income include only those who stood in the nearest degree of consanguinity to the testator or to his wife. The ordinary canon of interpretation, that the same words or phrases appearing in other parts of a will are presumed to have been employed with the same meaning, becomes applicable unless there is something indicating that the testator intended to use them in a different sense. Nothing of the kind appears here. *Ames* v. *Ames*, 238 Mass. 270, 275–276. *Corcoran* v. *Gage*, 289 Mass. 111, 113. *Tyler* v. *City Bank Farmers Trust Co.* 314 Mass. 528, 534.

The testimony of the attorney who drafted the will, that he discussed the meaning of the term next of kin with the testator before he executed the will, and the letter written after the death of the testator by this attorney to one of the respondents, stating that he had advised the testator that these words meant those who would take under the statute of distributions, should have been excluded. *Calder* v. *Bryant*, 282 Mass. 231. *Mahoney* v. *Grainger*, 283 Mass. 189. *Poor* v. *Hodge*, 311 Mass. 312, 317. Even if some of this evidence may have been admitted without objection, it does not thereby become entitled to any probative effect. The words next of kin had acquired a well established meaning at the time the will was executed. There is no reference to any statute governing the succession to intestate property. The will does not present any ambiguity. We are dealing not with a rule of evidence but with a question of substantive law, and the admission of such evidence must be entirely disregarded. *Moffatt* v. *Heon*, 242 Mass. 201, 205. *Saucier* v. *Saucier*, 256 Mass. 107, 110–111. *Boston Safe Deposit & Trust Co.* v. *Prindle*, 290 Mass. 577, 581–582. *Gray* v. *McCausland*, 314 Mass. 743, 747. *Boston Safe Deposit & Trust Co.* v. *Lewis*, 317 Mass. 137, 144.

We do not agree with the contention of Minnie Schwartz, a sister of Eva Blank, that, being the nearest next of kin of either the testator or his wife, she is entitled to the entire corpus of the trust. The testator intended that the kindred

both of himself and of his wife should receive the trust property and not that one set of kindred should share to the exclusion of the other. Neither did he intend that one half of the trust property should be distributed to his next of kin and the remaining half to the next of kin of his wife. The division is to be made not equally between different classes but equally among the members of a single class comprising those persons who are the next of kin of himself and his wife at the termination of the trust. The testator made no distinction between the kindred of himself and of his wife. Kindred of both are treated upon the same basis and in the same manner. Equality among the members of a class appears to be his predominant purpose. Eligibility to take is determined by the degree of consanguinity, and everyone qualified to take receives a share equal to that received by everyone else entitled to share in the distribution of the trust. Each takes in his own right and not by representation or per stirpes. Distribution per capita is intended of gifts to a class where there is no implication that the statute of distributions is to be applied. The property is to be distributed per capita. *Hill* v. *Bowers,* 120 Mass. 135, 136. *Shattuck* v. *Balcom,* 170 Mass. 245. *Cammann* v. *Abbe,* 258 Mass. 427. *Gleason* v. *Hastings,* 278 Mass. 409. *Boston Safe Deposit & Trust Co.* v. *Doolan,* 307 Mass. 233, 238.

The corpus of the trust is to be divided into eighteen equal shares; one share is to go to Minnie Schwartz and one share to each of the living nephews and nieces of the testator and to the personal representative of any nephew or niece who has died since November 7, 1948, the date fixed for the termination of the trust.

The trustees also seek directions respecting to whom they should pay the accumulated income. The income was payable in such amounts and to such of the next of kin in need of financial assistance as the trustees in their discretion should determine. The trustees were also authorized in their discretion to pay income to any next of kin of the testa-

tor or his wife or any relatives living outside of the United
States. None of the next of kin could justly complain
that they had not received any payments, or that those
they did receive were less than what they ought to have
received, or that the trustees should not have paid any
of the relatives, in the absence of a clear abuse of discre-
tion by the trustees. None of the next of kin or relatives
got any vested interest in the income until the trustees in
the honest exercise of their discretion should pay it over to
them. *Minot* v. *Tappan,* 127 Mass. 333. *Crawford* v.
*Langmaid,* 171 Mass. 309. *Rackemann* v. *Wood,* 203 Mass.
501. The corpus of the trust consisted entirely of real
estate which the testator hoped, as expressed in subpara-
graph 3 of the fifth clause, the trustees would retain unless
changed conditions made it prudent for them to sell, in
which event they were to invest "the principal fund" in
sound securities. This is the only express authority to in-
vest that was given to the trustees. The testator may have
thought that all the income would be distributed as it ac-
crued and apparently overlooked the possibility that there
might be surplus income, as he made no express provision
for its disposition. He did not provide for the distribution
of the trust fund with its accretions or for so much as might
be in the trust fund, but on the contrary he expressly di-
rected that the *net* proceeds derived from the conversion of
the corpus into cash were to be distributed upon the termi-
nation of the trust. (Italics supplied.) In these trust pro-
visions the testator clearly distinguished the income from
the principal of the trust and made a different disposition
of each. The income was to be segregated from principal,
and we find nothing indicating that the principal of the
trust was to be increased by accretions from income. We
think that, in these circumstances, the income cannot be
considered as a part of the principal and that it must pass
under the residuary clause of the will. *Welch* v. *Hill,* 218
Mass. 327, 331–332. *Bailey* v. *Bailey,* 236 Mass. 244. *Lor-
ing* v. *Dexter,* 256 Mass. 273. *Abbott* v. *Williams,* 268 Mass.
275, 285.

The final decree is reversed and a decree is to be entered in accordance with this opinion. Costs and expenses of the trustees are to be settled in their account, but costs and expenses of the respondents may be allowed by the Probate Court.

*So ordered.*