## COMMONWEALTH *vs.* SEBASTIAN PARES-RAMIREZ.

Middlesex.   December 2, 1986. — August 11, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Evidence,* Admissions and confessions. *Practice, Criminal,* Appeal, Instructions to jury. *Self-Defense. Malice. Homicide.*

This court declined to consider a criminal defendant's argument, raised for the first time on appeal, that his signed statement to police was inherently involuntary because a police officer, rather than a disinterested person, had translated the statement orally from written English, a language the defendant could not read, to Spanish for the defendant before he signed it. [608-609]

In a criminal case no substantial risk of a miscarriage of justice was created by the judge's instruction on self-defense, as applicable to a charge of second degree murder, or by his supplemental charge in response to a question from the jury. [609-611]

INDICTMENTS found and returned in the Superior Court Department on October 23, 1984.

A motion to suppress evidence was heard by *Robert A. Barton,* J., and the cases were tried before him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael R. Schneider,* Committee for Public Counsel Services, for the defendant.

*Natalea Skvir,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant appeals from convictions of murder in the second degree and unlawfully carrying a firearm. At trial, it was not disputed that the defendant had shot the victim, but the defendant claimed that he had acted in self-defense. On appeal, he argues that his defense was undermined by two prejudicial errors. The first claimed error is the denial of his pretrial motion to suppress a statement that he had signed.

The statement was read to the jury by a police officer and went with the jury to the deliberating room. The other alleged error is the judge's failure to instruct the jury adequately with respect to self-defense as it relates to the charge of murder in the second degree. We transferred the appeal to this court on our own motion. We affirm the convictions.

At trial, the jury were presented with three distinct versions of the events preceding the shooting. Nora Gonsalez Rio, a prosecution witness, gave one account inculpating the defendant. A second version, which we summarize below, was contained in the contested statement signed by the defendant at the police station in Lowell. The third version, more favorable to the defendant than the other two, particularly with respect to his defense of self-defense, was provided by the defendant's trial testimony.

According to the written statement, the defendant went with his wife and child to the victim's apartment in the early morning, July 17, 1984, in order to collect $7,000 owed him by the victim. The victim had called the defendant and told him that he had the money. When the defendant arrived, the victim was very drunk and started an argument. The victim said that he had all the money he owed the defendant but was going to pay only $1,500. The defendant became very angry because he had driven a long distance to collect the money and because the victim called him obscene names in front of his wife and child. The defendant rose from the table in the course of the argument and started to go outside. The victim pulled one knife from his pocket and obtained another from the kitchen. While everyone was leaving the apartment, the victim was attempting to stab the defendant with both knives at the same time. The defendant ran to his car and retrieved his gun from under the seat. He told the victim that he could have the money and to leave him alone, but the victim continued swearing and trying to stab the defendant. The defendant then shot the victim.

At trial, the defendant testified that, during the course of an argument over a drug transaction, the victim struck the defendant on the top of the head, that the defendant became dizzy and confused, that the victim "grabbed something like knives" from a kitchen drawer, and that the defendant was afraid that

the victim would kill or injure him. According to his testimony, the defendant fled, and, while still dizzy and afraid, he "heard . . . shots or something like that." The defendant further testified that he thought the victim was going to kill him, that he did not know at the time if he had actually shot the victim, and that he never had planned to kill the victim.

The defendant supported his pretrial motion to suppress the written statement with an affidavit and memorandum of law. The judge conducted an evidentiary hearing and made findings and rulings which he set forth in a memorandum of decision. He denied the motion to suppress the statement.

The thrust of the defendant's affidavit in support of his motion to suppress was that his signed statement was coerced. In his affidavit, he asserted that, while he was in the custody of the Lowell police, he was not allowed to make any telephone calls, he was not allowed to consult an attorney despite his requests to do so, and "[a]fter constant questioning and after constant pressures [he] made certain statements to a Spanish-speaking officer." The affidavit continued: "These statements were not voluntary. I was also kept in custody well over 72 hours without being given the opportunity to phone a member of my family or to seek the services of an attorney. . . . At some point I was asked to sign some papers in English which I could not understand because I cannot speak, write, or read English. . . . The police officers coerced me into making statements which I did not want to make by submitting me to constant psychological pressures which increased as the period I was held incommunicado was prolonged. . . . I had been constantly questioned since my arrest non-stop for more than 20 hours before I made any statements. I had not slept for more than 48 hours before I made any statements. . . . I had not been given food for more than 20 hours before I made any statements. I had not eaten anything for more than 48 hours before I made any statements."

In his memorandum in support of the suppression motion, the defendant repeated the assertions he had made in his affidavit. He argued that he had not waived any of the rights addressed by *Miranda* v. *Arizona,* 384 U.S. 436 (1966), and

that the police had not respected them. He also argued that, considering the totality of the circumstances, his statements, including the signed statement in question, were coerced by the treatment he had received. The memorandum emphasized the significance to the question of voluntariness of psychological pressure, of intense and protracted interrogation, of the inability to understand English, and of being held "incommunicado" and without food or sleep.

The judge's findings focused on the issues raised by the defendant's affidavit and memorandum. He found that the defendant, while sleeping on a garage floor in Springfield, was arrested at approximately 5 A.M. on August 17, 1984, by a Springfield police officer on an outstanding warrant for murder from the Lowell District Court. Shortly after being arrested, the defendant was advised of his Miranda rights in English and Spanish by Officer Joseph Morales, a Spanish-speaking police officer of the Springfield police department. Subsequently, the defendant was booked at the Springfield police department in the presence of Officer Morales, who explained all the defendant's rights to him in Spanish. At approximately 9 A.M., after the defendant's hand was treated at a hospital, Officer Charles Sadlier and Spanish-speaking Officer Julio Gonzales of the Lowell police department arrived in Springfield to transport the defendant to the Lowell police station. During the ride to Lowell, the defendant made two spontaneous statements which were not the result of any interrogation. The statements were to the effect that he did not want to involve his family and that the victim had made him do it.

At approximately noon, the defendant arrived at the Lowell police station and was fully advised of his rights in both English and Spanish by Officer Gonzales. The defendant voluntarily signed two Miranda cards printed in English and Spanish. The defendant was further advised, in Spanish, of his right to use the telephone, and signed slips confirming that fact.

Subsequently, the defendant gave an oral statement to the Lowell police officers (impliedly, in Spanish). This statement was reduced to writing in English. Officer Gonzales then fully, fairly, and completely translated this written document to the

defendant in Spanish. The defendant then voluntarily signed the statement.

The judge specifically found that the defendant at all times was coherent, oriented, and unaffected by liquor or drugs, and that no promises, threats, or inducements were offered to the defendant. The judge then found "beyond a reasonable doubt, considering the totality of the circumstances, that [the defendant] understood his rights and knowingly, intelligently, and voluntarily waived his rights." Furthermore, the defendant's judgment was not impaired when he made the statements to the Lowell police; the judge found, beyond a reasonable doubt, that the statements were voluntary and the product of the defendant's free and rational intellect. The judge also stated that he did not believe the defendant's testimony at the motion hearing.

The judge concluded that the Commonwealth had met its burden of proving beyond a reasonable doubt that the defendant properly received his Miranda warnings and knowingly, intelligently, and voluntarily waived those rights with respect to any statements made on August 17, 1984, and that those statements were voluntary. Accordingly, the judge denied the defendant's motion to suppress the statements made on August 17, 1984.

On appeal, the defendant's challenge to the admissibility of the signed statement is narrowly limited. His only argument is this: "The written confession, printed in a language which the defendant could not read and translated to him by a police officer whose services were in no sense chosen by him, whose qualifications as an interpreter were not demonstrated, and whose impartiality was open to question, should have been excluded as involuntary, in the absence of some objective authentication of the accuracy of the translation." We understand the defendant's position to be that, despite the judge's finding that Officer Gonzales had fully, fairly, and completely orally translated the statement from English to Spanish for the defendant's benefit before he signed it, a translation in such circumstances is inherently unreliable, and that, for admissibility, it should be required that the translation be made, or at

least corroborated, by a qualified and disinterested person. In the absence of such a requirement, according to the argument, a judge is in a poor position to determine whether the statement was truly voluntary, that is, whether the defendant really understood the meaning of the statement he signed.[1] The Commonwealth and the defendant have presented creditable opposing arguments relative to the merits of the defendant's position. But the Commonwealth has also argued that we should not decide the question because it has been raised for the first time on appeal. We agree with the Commonwealth that the defendant gave the motion judge no hint of the argument he presents here, and we also agree that, as a consequence, we should not consider the argument on appeal. See *Commonwealth* v. *Lett,* 393 Mass. 141, 144 (1984); *Commonwealth* v. *Marchionda,* 385 Mass. 238, 242 (1982). Of course, we recognize that we may consider issues on appeal not raised at trial, but our power to do so is rarely exercised, and is exercised only in response to a serious and obvious error creating a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). That situation is not present here. In fact, as the Commonwealth argues, the Commonwealth would be unfairly prejudiced by our consideration of the defendant's argument because, if the argument had been made below, the Commonwealth would have been on notice that the statement's admissibility was in question, and it could have offered Officer Gonzalez's testimony concerning the defendant's oral statements on which the written statement purportedly was based. It may well have refrained from doing so in reliance on the judge's findings of lack of coercion and voluntariness in the traditional sense.

The defendant's second claim of error is that the judge failed to instruct the jury adequately with respect to self-defense as a defense to the charge of murder in the second degree. He

---

[1] To the extent that the defendant makes a separate contention that the evidence was insufficient to warrant the judge's finding that Officer Gonzales fully, fairly and completely translated the written statement for the defendant before the defendant signed it, we reject the contention. Gonzales so testified.

also contends that the judge's supplemental instructions in reply to the jury's questions were erroneous because they failed to define self-defense. No objection was taken at trial. Therefore, we review the jury instructions for clear error creating a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman, supra.*

After general instructions on the use of evidence, proof beyond a reasonable doubt, and other matters, the judge delivered a thorough, detailed, and errorless charge on the law of self-defense. The instruction clearly placed on the Commonwealth the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. The judge then charged the jury on murder in the first degree, clearly explaining that a killing in self-defense is not "unlawful" and that the Commonwealth had to disprove self-defense beyond a reasonable doubt in order to prove malice aforethought. He then turned to the elements of murder in the second degree, and told the jury that this crime, like murder in the first degree, is an unlawful killing committed with malice aforethought. He referred the jury to the definitions of "unlawful killing" and "malice aforethought" that he had given in connection with murder in the first degree, but he did not repeat those definitions or his explanation of how self-defense negates those elements of murder. The judge later explained that the use of excessive force in self-defense was manslaughter.

There was no error. The judge was not required to repeat the nexus between self-defense and the elements of murder. "[T]he law does not require repetition of the same thought at each turn." *Commonwealth* v. *McLeod,* 394 Mass. 727, 739, cert. denied sub nom. *Aiello* v. *Massachusetts,* 474 U.S. 919 (1985). *Commonwealth* v. *Doucette,* 391 Mass. 443, 452 (1984), quoting *Commonwealth* v. *Peters,* 372 Mass. 319, 324 (1977). *Commonwealth* v. *Albert,* 391 Mass. 853, 859 (1984). There is no reason to believe that a juror would have been misled into thinking that self-defense negated unlawfulness and malice aforethought with respect only to murder in the first degree. Viewed as a whole, the instructions fully, fairly, and accurately explained the law.

We turn to the defendant's challenge to the supplemental instructions. After deliberating for several hours, the jury submitted two questions to the trial judge, one of which was the following: "Explain the three degrees of murder." The judge explained that there were but two degrees of murder, and another crime, manslaughter. He then repeated his earlier instructions on the elements of those crimes, including the explanations of how self-defense contradicts both unlawfulness and malice aforethought. The judge was not required to repeat his thorough instructions on self-defense, particularly here, where such repetition would not have been directly responsive to the jury's inquiry. There was no error.

*Judgments affirmed.*