COMMONWEALTH *vs.* ANGEL PANIAQUA.

Suffolk. March 3, 1992. - December 15, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, Search and seizure. *Search and Seizure*, Exigent cir-
cumstances. *Practice, Criminal*, Challenge to jurors, Appeal. *Firearms.*
*Controlled Substances.*

Police officers who responded promptly to a radio call reporting a probable
    firing of gunshots at a certain apartment building had probable cause
    and exigent circumstances to justify their warrantless entry of a third-
    floor apartment, to which they were directed by a bystander, and their
    seizure of items in plain view therein. [797-799]
Where the judge at a criminal trial, on the defendant's objection, disal-
    lowed a peremptory challenge by the Commonwealth of a prospective
    juror, and the Commonwealth immediately sought review of the judge's
    action by means of a proceeding in this court under G. L. c. 211, § 3,
    the defendant's later election to proceed to trial with the challenged
    juror excused, rather than accept the judge's offer of a continuance un-
    til the issue was resolved, precluded the defendant, on direct appeal of
    his convictions, from arguing that the juror was excused erroneously.
    [799-800]
Evidence at a criminal trial was sufficient to warrant the jury in finding
    the defendant guilty of unlawfully carrying a firearm, unlawful posses-
    sion of ammunition, and unlawful possession of cocaine. [801-803]
O'CONNOR, J., with whom NOLAN, J., joined, dissenting in part.

INDICTMENTS found and returned in the Superior Court
Department on May 11, 1987.

A pretrial motion to suppress evidence was heard by *Her-
bert Abrams*, J., and the cases were tried before *Guy
Volterra*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*James A. Couture* for the defendant.

*Nijole Makaitis*, Assistant District Attorney (*Carmel Motherway*, Assistant District Attorney, with her) for the Commonwealth.

ABRAMS, J. Convicted of unlawfully carrying a firearm, unlawful possession of ammunition, and unlawful possession of cocaine, the defendant, Angel Paniaqua, appeals.[1] On appeal, the defendant claims error in (1) the denial of his motion to suppress; (2) the Commonwealth's exercise of a peremptory challenge; and (3) the denial of his motions for required finding because the evidence was insufficient to support the convictions. We affirm.

1. *The motion to suppress.*[2] At issue is whether exigent circumstances justified the police officers' warrantless entry into an apartment where the defendant was arrested and the seizure of items in plain view. There was testimony from which the judge could find that Boston police Officer William E. Doogan, while patrolling in a police vehicle, received a radio report that gunshots had been fired in a hallway at 166 Seaver Street in the Roxbury section of Boston. Doogan arrived at that location in about one minute. Within another minute or two, several other officers arrived, and all of the

---

[1] The judge sentenced the defendant on the firearm charge and placed the other two convictions on file. "However, since the placing of a case on file does, inter alia, suspend, for as long as the case remains on file, a defendant's right to appeal alleged error in the proceeding, the defendant *must* consent to the filing" (emphasis supplied). *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975). *Commonwealth* v. *Mora*, 402 Mass. 262, 263 n.1 (1988). The better practice is not to place a case on file without the defendant's consent. Because the record does not reflect the defendant's consent to two convictions' being placed on file we shall consider them.

[2] The judge did not make any findings of fact. Failure to make findings is not fatal, however, when the record makes the judge's reasoning clear. See *Commonwealth* v. *Parham*, 390 Mass. 833, 837-838 (1984); *Commonwealth* v. *Forrester*, 365 Mass. 37, 44-45 (1974); *Commonwealth* v. *Ayles*, 31 Mass. App. Ct. 514, 517 (1991). It is clear from the judge's discussion with counsel that the judge's denial of the defendant's motion to suppress was grounded on the judge's determination that the officers' entry into the third-floor apartment was dictated by both exigent circumstances and probable cause as disclosed by the testimony of two of the participating officers.

officers went into the building. On the second floor, a woman in the hallway said, "[T]hey ran in there," as she pointed to the rear door of a third-floor apartment. Three officers went up the front stairway, and two ascended the rear stairway, to the third floor. Some of the officers had drawn their guns. As the two officers ascended the rear stairs, a man later identified as Eduardo Diaz opened the rear door of the third-floor apartment, looked out, and then closed the door. Diaz then opened the apartment's front door and asked the officers there what they wanted. Diaz told the officers that he knew nothing about a shooting. The officers stepped inside. Doogan entered the apartment and saw the defendant running toward the kitchen while carrying a gun. Doogan and another officer chased the defendant. The defendant threw the gun and a tinfoil ball into a trash can. An officer retrieved the gun, which was loaded, and the foil ball. We believe that the judge was warranted in concluding that the circumstances known to the officers created an exigency which, along with probable cause, justified the warrantless entry.

A police radio call alerted the police to a probable firing of shots at 166 Seaver Street. The police reasonably believed the circumstances to be life-threatening. The rapid response by five officers within three minutes of the radio report meant that there was a strong possibility that the person who fired the shots still was at 166 Seaver Street. The woman in the second-floor hallway identified the third-floor apartment occupied by the defendant as the location of the person who fired the shots. The opening and closing of the rear door to that apartment further identified that apartment as a possible location of a suspect. The facts here clearly warranted the officers to conclude that there was a danger to the public and that at least one suspect and one weapon would be located at 166 Seaver Street. Speed would be essential if the person who fired shots were to be apprehended. The judge correctly concluded that the Commonwealth had sustained its burden of proving that exigent circumstances and probable cause justifying the police officers' entry into the apartment existed. See *Commonwealth* v. *Franklin*, 376 Mass.

885, 899-900 (1978). The subsequent seizure of the firearm, ammunition, and foil ball was lawful. There was no error in denying the defendant's motion to suppress.

2. *The Commonwealth's use of a peremptory challenge.* The defendant asserts that he is entitled to a new trial because the judge erred in requiring the defendant to choose between a stay of the trial pending an appeal or to proceed to trial without a juror who was peremptorily challenged by the Commonwealth. In the course of jury empanelment, the prosecutor challenged one juror. Defense counsel objected, stating, "He's obviously Hispanic. The Defendant is Hispanic." The judge disallowed the challenge. The prosecutor responded that, "under [*Commonwealth v. Soares*, 377 Mass. 461, cert. denied, 444 U.S. 881 (1979)] there has to be a pattern." The judge then asked the prosecutor why she was challenging the juror. She answered, "I'm challenging him, first of all, because I don't like his looks. Secondly, he lives in Hawthorne Place. He's young; he's single. And he's watching me in a strange manner." The judge again rejected the challenge, suggesting that she could seek relief from a single justice of this court.

On the following Monday, the prosecutor moved for reconsideration of the disallowance of the peremptory challenge on the ground that there had been no showing of a pattern of excluding Hispanic jurors. The judge denied the motion. The Commonwealth then sought relief from a single justice of this court. The single justice conducted a hearing on the "Commonwealth's Application Pursuant to G. L. c. 211, Sec. 3 For Leave To Appeal The Denial of a Peremptory Challenge During Empanelment." After hearing counsel, the single justice announced that he would reserve and report the matter to the full court unless the parties could "work it out [them]selves."

The proceedings then resumed in the trial court. The judge said that since there were "only two individuals of Hispanic origin in the . . . group of potential jurors . . . out of fifty, the Defendant's objection to the peremptory challenge exercised by the Commonwealth was deemed by [the judge] to be mer-

itorious." "Moreover," he said, "the reasons stated by the Assistant District Attorney bordered on the ludicrous. This Court determined that it would not permit the exercise of such a peremptory challenge. There is a pattern of exclusion of a distinct ethnic group when, out of two people summonsed to the courtroom, one is challenged from the jury for no reason whatsoever. Accordingly, and in order to comply with the wishes of the Supreme Judicial Court, these proceedings are stayed."

Defense counsel objected, stating that, if the trial were to be stayed until the juror issue was resolved in the Supreme Judicial Court, the trial would not take place for another six months, during which time the defendant would be required to remain in jail. Thus, said counsel, "We would be prepared to work out whatever accommodation, including impanelling a new jury tomorrow . . . ." The judge replied that, rather than empanelling a new jury, a juror could be seated to replace the challenged juror. Defense counsel said, "Whatever the accommodation is, we are not able to withstand a six month delay. And we are prepared to go ahead." Counsel also announced that he was not giving up his right to appeal the question whether the defendant was entitled to have the challenged juror on his jury, but, if his only choice was to wait six months for the juror issue to be resolved by the Supreme Judicial Court or to go ahead with the trial, he would go ahead with the trial.

The defendant now argues that his choice to proceed with the trial, without the challenged Hispanic juror, rather than delay the trial for a six-month period during which the defendant would remain in jail, cannot fairly be deemed to be a voluntary relinquishment of his right to argue on appeal that the challenged juror was excused erroneously. We recognize that the defendant may have been put to a difficult choice; however, we are not persuaded that it is unfair to hold the defendant to his choice to proceed without the juror, knowing all the circumstances. The defendant made his choice and cannot now claim error by the judge.

3. *The sufficiency of the evidence.* " 'In reviewing the denial of a motion for a directed verdict in a criminal case, [the court determines] whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged.' *Commonwealth* v. *Campbell,* 378 Mass. 680, 686 (1979). See *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979); *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979)." *Commonwealth* v. *Stewart,* 398 Mass. 535, 540 (1986). "It is sufficient that the evidence permitted the inference which the jury obviously drew against [Paniaqua]." *Commonwealth* v. *Nelson,* 370 Mass. 192, 203 (1976).

Possession is the intentional exercise of control over an item. *Commonwealth* v. *Brzezinski,* 405 Mass. 401, 409 (1989). There was ample evidence at the trial that the defendant possessed a gun containing ammunition. He threw the loaded gun into a trash can. At issue is the conviction for unlawful possession of cocaine.[3]

The evidence concerning the foil ball, in the light most favorable to the Commonwealth, may be summarized as follows. The defendant threw a foil ball into the trash can. The contents of the foil ball were described as "a white rock-like and powdery substance [which the officer] believed . . . to be cocaine." The certificate issued by the Commonwealth pursuant to G. L. c. 111, § 13 (1990 ed.), certifies that the "powder contained in *3 aluminum foil*" packets was examined (emphasis supplied). "The powder was found to contain: Cocaine." The analysis indicates that there was 10.43 grams of cocaine. The jury therefore could have determined that at least one, if not all three, of the foil packets contained powder which was determined to be cocaine.[4]

---

[3]The defendant was charged with trafficking in cocaine. The judge reduced the trafficking charge to possession of cocaine.

[4]Indeed, in his closing argument, defense counsel conceded that the jury might draw such an inference. He said: "We know that somebody's [foil package] had cocaine in it, because we have three packets in there; and

The jurors knew that the foil ball contained a white powdery substance which the officers believed to be cocaine. The jurors could credit the officers' beliefs that the white powdery substance was cocaine. Officer Stevens, for example, testified in response to a question by the defense that he (Stevens) would not "testify about something that he was not certain about." (At the time of trial, Stevens had been on hundreds of drug raids.) Another officer stated, in response to a question by the defense, that this was not the first arrest he had made where drugs were found. The defendant did not challenge the expertise of the officers at trial.[5] Further, throughout the trial, both the Commonwealth and the defendant repeatedly asked questions as to what substances were found and what the officers saw. The opinion of one of the officers was elicited by the defendant on cross-examination. The defendant did not raise any objection to the officers' expertise as to what contraband (drugs) was observed in the apartment that night. Throughout the trial, the defense strategy was to challenge the Commonwealth's claim that the defendant possessed the items (the gun, the bullet, and the drugs) and the chemical analysis. At no time has the defendant challenged the expertise of the officers. "The theory of law

---

the laboratory said there's cocaine. There isn't any clear indication that what [the defendant] had had dope in it. However, I would submit that if they found two packets with tinfoil, and there's another packet that he had that looks like it, maybe you can conclude that his packet had dope in it, if you believe . . . that [the defendant] was dumb enough to stand there with a tinfoil packet and wait until the police came in; and, then, when they came in, in their presence throw it in the trash. I submit to you that part of it is totally incredible."

[5]Indeed, even on appeal, the defendant has not argued that the officers were not qualified to express their opinion on the nature of the substance. "[W]e may consider issues on appeal not raised at trial [or, in this case, even on appeal], but our power to do so is rarely exercised, and is exercised only in response to a serious and obvious error creating a substantial risk of a miscarriage of justice." *Commonwealth* v. *Pares-Ramirez*, 400 Mass. 604, 609 (1987). This conviction does not meet that standard especially in light of the fact no judgment has been imposed on this offense. The defendant has not complained or sought to have himself discharged or sentenced on this conviction. See *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975).

on which by assent a case is tried cannot be disregarded when the case comes before an appellate court for review. . . ." *Commonwealth* v. *Fernette*, 398 Mass. 658, 667 (1986), quoting *Santa Maria* v. *Trotto*, 297 Mass. 442, 447 (1937).[6]

"Absent objection, the hearsay evidence was properly admitted, and the jurors were entitled to give it such probative effect as they deemed appropriate." *Abraham* v. *Woburn*, 383 Mass. 724, 726 n.1 (1981). See *Commonwealth* v. *Keevan*, 400 Mass. 557, 562 (1987). Accord *People* v. *Bailey*, 1 Cal. App. 4th 459 (1991). Additionally, there was evidence that (in addition to running away from the police and throwing the foil bag into the trash can) the defendant gave a false name and changed his appearance by the time of trial. There was, therefore, extensive evidence of the defendant's consciousness of guilt. See *Commonwealth* v. *Doucette*, 408 Mass. 454, 461 (1990) ("Actions . . . that indicate a defendant's consciousness of guilt together with other evidence are sufficient to prove . . . guilt").[7]

*Judgment affirmed.*

O'CONNOR, J. (dissenting in part, with whom Nolan, J., joins). I, too, would affirm the defendant's conviction of unlawfully carrying a firearm, and I agree that the guilty verdict with respect to the indictment charging unlawful posses-

---

[6]Clearly, it would have been better for the Commonwealth's trial counsel to make explicit the drug training and experience of the officers. The defendant himself brought out much of the evidence of the officers' opinion and expertise. Appellate counsel for the Commonwealth was not trial counsel.

[7]Evidence of consciousness of guilt alone cannot support a conviction but "evidence of such a state of mind when coupled with other probable inferences, may be sufficient to amass the quantum of proof necessary to prove guilt." *Commonwealth* v. *Booker*, 386 Mass. 466, 470 (1982), citing *Commonwealth* v. *Best*, 381 Mass. 472, 483 (1980); *Commonwealth* v. *Porter*, 384 Mass. 647, 653 (1981). Here, the observation of the white powder, the officer's familiarity with drug control, and the laboratory report that the white powder was cocaine provide that additional evidence.

sion of ammunition should stand. I do not agree, however, that the evidence was sufficient to warrant the jury's verdict of guilty on the reduced charge of unlawful possession of cocaine. The defendant is constitutionally entitled to an acquittal on that charge.

The trial took place in March, 1989, approximately two years after the events that the trial addressed. The evidence most favorable to the Commonwealth showed that on April 7, 1987, the defendant threw a tinfoil ball into a trash barrel in a kitchen at 166 Seaver Street in the Roxbury section of Boston, and Officer William E. Doogan retrieved it. The police also retrieved from the kitchen at 166 Seaver Street two other tinfoil packages. There was no evidence that the defendant had ever been in possession of either of those two packages. The contents of the tinfoil ball and the other two tinfoil packages were commingled and then they were analyzed by the Department of Public Health. The Commonwealth introduced in evidence a certificate, pursuant to G. L. c. 111, § 13 (1990 ed.), stating that the combined contents of the tinfoil ball and the other tinfoil packages contained cocaine.

The evidence also included the following. Officer Doogan testified that, immediately after he picked the tinfoil ball out of the trash barrel on April 7, 1987, he opened the ball and "saw a white rock-like and powdery substance that [he] believed at the time [when he picked it up] to be cocaine." Doogan did not testify about why he believed at that time that the substance was cocaine and, most importantly, he did not testify to any opinion that he may have held at the time of the trial as to what the substance was. Doogan did not testify as an expert, and indeed there was no evidence that would have qualified him as such. Surely, his testimony "in response to a question by the defense, that this was not the first arrest he had made where drugs were found," referred to by the court, *ante* at 802, would not qualify him as an expert in drug recognition and identification.

Officer Frederick Stevens testified that "Officer Doogan went to the trash barrel and retrieved . . . a large aluminum

ball, which [Doogan and Stevens] found later to contain a white substance which [they] believed to be cocaine at that time." Stevens, too, did not testify about his reasons for believing in 1987 that the substance was cocaine, and he too did not express an opinion at trial that the substance was indeed cocaine. Like Doogan, Stevens did not testify as an expert, and there was no evidence that, either in April, 1987, or at the time of trial, he was an expert in drug recognition and identification. Certainly, Stevens's testimony, apparently relied on by the court, *ante* at 802, that he "would not 'testify about something that he was not certain about,'" says nothing about Stevens's expertise. Furthermore, the fact that, at the time of the trial in 1989, "Stevens had been on hundreds of drug raids," *ante* at 802, does not warrant an inference that, either in April, 1987, or even at the time of trial, Stevens was an expert in drug recognition and identification.

So, it may well be that "[t]he jurors could credit the officers' beliefs that the white powdery substance was cocaine," as the court states, *ante* at 802, if all that is meant by that is that the jury could have found that in April, 1987, two years before the trial, two police officers without drug expertise "believed" for unstated reasons that the tinfoil ball attributable to the defendant contained cocaine. If the court means, however, that the police officers' testimony warranted the jury in finding that the tinfoil ball in fact contained cocaine, the court is clearly wrong. The officers' beliefs in 1987, at a time as to which the record contains no evidence of their training and experience in drug recognition and identification, are completely without probative value. See *Commonwealth* v. *Santaliz, ante* 238, 241-242 (1992); *Commonwealth* v. *Dawson*, 399 Mass. 465, 466-467 (1987). As the Chief Justice states in P.J. Liacos, Massachusetts Evidence 409 (5th ed. 1981), "[t]he concept of relevancy, or inherent probative worth, is as much practical as legal. To determine the inherent probative worth of evidence of a fact (B) offered to establish another fact (A), it must be shown that from the viewpoint of logic, experience, or common sense that proof of

B tends to prove A." From "the viewpoint of logic, experience, or common sense," to use the Chief Justice's words, the fact that, at a time when two police officers who, for all that appears, were untrained and inexperienced with respect to drugs, thought that a particular substance was cocaine, is irrelevant.

But, says the court, "[t]he defendant did not challenge the expertise of the officers at trial," *ante* at 802, and " '[a]bsent objection, the hearsay evidence was properly admitted, and the jurors were entitled to give it such probative effect as they deemed appropriate.' " *Ante* at 803, quoting *Abraham* v. *Woburn*, 383 Mass. 724, 726 n.1 (1981). Of course, it is not difficult to understand why the defendant did not challenge the officers' expertise at trial. The officers did not purport to testify as experts. They did not offer opinions at trial that the substance in question was cocaine. In any event, neither *Abraham* v. *Woburn*, *supra*, nor *Commonwealth* v. *Keevan*, 400 Mass. 557, 562 (1987), cited by the court, both of which involve probative, but unobjected-to, hearsay evidence, stands for the proposition that a jury are free to give unobjected-to nonprobative (irrelevant) evidence whatever effect the jury may deem appropriate. Indeed, the court said in *Keevan*, *supra*, quoting *Mahoney* v. *Harley Private Hosp., Inc.*, 279 Mass. 96, 100 (1932), "Hearsay, once admitted, may be weighed with the other evidence, *and given any evidentiary value which it may possess*" (emphasis added). The testimony concerning the police officers' beliefs, uninformed by training or experience, was without probative effect when it was offered, and it did not acquire probative effect by having been admitted without objection.[1] See *Agricultural Nat'l Bank* v. *Schwartz*, 325 Mass. 443, 448 (1950) ("Even if some of this evidence may have been admitted without objec-

---

[1]The court relies not only on *Abraham* v. *Woburn*, 383 Mass. 724 (1981), and *Commonwealth* v. *Keevan*, 400 Mass. 557 (1987), but also on *People* v. *Bailey*, 1 Cal. App. 4th 459 (1991). In that case, the court held: "A trier of fact reasonably could rely on the testimony *of a trained narcotics officer* received without objection that the substance possessed was rock cocaine . . ." (emphasis added). *Id.* at 465.

tion, it does not thereby become entitled to any probative effect").

In affirming the trial judge's denial of the defendant's motion for a required finding of not guilty on the cocaine indictment, the court appears to rely not only on the nonprobative evidence of the officers' beliefs two years before the trial, but also on the certificate introduced by the Commonwealth pursuant to G. L. c. 111, § 13. The court notes that that certificate would warrant the jury in finding that "at least one, if not all three, of the foil packets contained powder which was determined to be cocaine." *Ante* at 801. Of course, it is true that the jury reasonably could have concluded that at least one of the three tinfoil packages retrieved from 166 Seaver Street contained cocaine, but it is equally true that they could not rationally have determined from the certificate that "all three" packages, prior to their having been commingled, contained cocaine, nor could they have rationally determined that the one package proved to have been in the defendant's possession contained cocaine. Because the contents of the three packages were commingled before analysis, a fact not disputed by the Commonwealth, but virtually ignored by the court, the certificate contributes nothing to the Commonwealth's case.

Brief comment on the "extensive evidence of the defendant's consciousness of guilt," *ante* at 803, is appropriate. The court recognizes that "[e]vidence of consciousness of guilt alone cannot support a conviction. . . ." *Ante* 803 at n.7. Here, with respect to the charge of unlawful possession of cocaine, the evidence of consciousness of guilt (of *some* crime, at least) stands alone. Therefore, it cannot support a conviction.

"[T]o sustain the denial of a directed verdict, it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). There was not

enough evidence in this case to satisfy any rational trier of fact that the defendant possessed cocaine. Accordingly, the defendant is entitled to a finding of not guilty of that offense as a matter of constitutional due process. *Jackson* v. *Virginia*, 443 U.S. 307, 314-316 (1979).